Ralph M. NOWAK, Administrator of
the Estate of Sally Ann Nowak,
et al., Plaintiffs—Appellees,

v.

TAK HOW INVESTMENTS, LTD., d/b/a
Holiday Inn Crowne Plaza Harbour
View, Defendant—Appellant.

No. 96–1006.

United States Court of Appeals,
First Circuit.

Heard May 6, 1996.

Decided Aug. 22, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 20, 1996.

Alan B. Rubenstein, with whom Robert B. Foster and Rackemann, Sawyer & Brewster, Boston, MA, were on brief, for appellant.

Edward Fegreus, Boston, MA, for appellees.

Before STAHL, Circuit Judge, COFFIN, Senior Circuit Judge, and CUMMINGS,* Circuit Judge.

CUMMINGS, Circuit Judge.[1]

A Massachusetts resident who accompanied her husband on a business trip to Hong Kong drowned in their hotel's swimming pool. Plaintiffs later brought this wrongful death diversity action against the Hong Kong corporation that owns the hotel—a corporation that has no place of business outside of Hong Kong. Defendant moved for dismissal, arguing that a Massachusetts court could not exercise personal jurisdiction consistently with due process and, alternatively, that the case should be dismissed on the grounds of *forum non conveniens*. The district court denied both motions, and we now affirm.

## I.

Tak How is a Hong Kong corporation with its only place of business in Hong Kong. Its sole asset is the Holiday Inn Crowne Plaza Harbour View in Hong Kong ("Holiday Inn"), where the accident in this case took place. Tak How has no assets, shareholders, or employees in Massachusetts. Sally Ann Nowak ("Mrs. Nowak") was at all relevant times married to plaintiff Ralph Nowak ("Mr. Nowak") and was the mother of their two children (collectively, the plaintiffs are "the Nowaks"). The Nowaks lived in Marblehead, Massachusetts, and Mr. Nowak was employed by Kiddie Products, Inc., which has its place of business in Avon, Massachusetts. Kiddie Products does extensive business in Hong Kong. As a Preliminary Design Manager in the Marketing Department, Mr. Nowak customarily made two business trips to Hong Kong each year, accompanied by his wife on one of those trips.

Kiddie Products employees had made trips to Hong Kong since at least 1982, but the company's relationship with Tak How and the Holiday Inn began only in 1992. John Colantuone, a vice-president, was one such employee who had travelled to Hong Kong since 1982 and had stayed at various other hotels. Colantuone was acquainted with the Holiday Inn through advertisements on Hong Kong radio in 1983 or 1984, but only decided to stay there in 1992 after becoming dissatisfied with the rates at other hotels. On his first visit, Colantuone met with the Holiday Inn's sales manager to negotiate a corporate discount for Kiddie Products employees. Holiday Inn agreed to the discount and wrote a letter confirming the arrangement based on a minimum number of room nights per year. Marie Burke, Colantuone's administrative assistant, made all hotel reservations for the company's employees. Although Kiddie Products regularly compared rates at other hotels, Burke was told to book all reservations at the Holiday Inn until instructed otherwise. Since 1992, Kiddie Products employees have stayed exclusively at the Holiday Inn.

In June 1993, the Holiday Inn telecopied Colantuone a message announcing new corporate rates and other promotional materials. Burke requested additional information, and the hotel promptly responded. In July 1993, after a series of exchanges by telecopier, Burke sent a reservation request to the Holiday Inn for several employees for September and October 1993. One of the reservations was for Mr. and Mrs. Nowak to arrive on September 16. On September 18, while the Nowaks were registered guests at the hotel, Mrs. Nowak drowned in the hotel swimming pool. The specific facts surrounding her death are not relevant here. It is uncontested that in 1992 and 1993, prior to Mrs. Nowak's death, Tak How advertised the Holiday Inn in certain national and international publications, some of which circulated in Massachusetts. In addition, in February 1993, Tak How sent direct mail solicitations to approximately 15,000 of its previous guests, including previous guests residing in Massachusetts.

* Of the Seventh Circuit, sitting by designation.

1. Section II.A. was authored by Judge Coffin. This opinion was circulated to the active judges of the First Circuit before issuance. This informal circulation, however, is without prejudice to a petition for rehearing or suggestion of en banc reconsideration on any issue in the case. *NLRB v. Hospital San Rafael, Inc.,* 42 F.3d 45, 51 n. 1 (1st Cir.1994).

The Nowaks filed this wrongful death action in Massachusetts state court in June 1994. Tak How then removed the case to federal district court and filed two motions to dismiss—one for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) and the other for *forum non conveniens.* The district court initially denied the motion to dismiss for *forum non conveniens,* and then, after allowing time for jurisdictional discovery, issued a memorandum and order denying the Rule 12(b)(2) motion. *Nowak v. Tak How Inv. Ltd.,* 899 F.Supp. 25 (D.Mass.1995). The district court granted Tak How's motion for certification of the jurisdictional issue, but this Court denied Tak How's request for a stay of the district court proceeding pending appeal. Nonetheless, believing that a resulting judgment would not be enforceable in Hong Kong, Tak How did not answer the Nowaks' complaint. Accordingly, the district court entered a default judgment against Tak How for $3,128,168.33. Tak How appeals the denial of its Rule 12(b)(2) motion and its motion to dismiss the case for *forum non conveniens.*

### II.

We first review the denial of Tak How's motion to dismiss for lack of personal jurisdiction. The district court employed a prima facie standard in making its determination rather than adjudicating the jurisdictional facts. See *Foster–Miller, Inc. v. Babcock & Wilcox Can.,* 46 F.3d 138, 145–147 (1st Cir.1995). Both the court's decision to use the prima facie standard and its conclusion under that standard are reviewed *de novo. Id.* at 147. To begin, we find no error in the district court's choice of the prima facie standard. A full-blown evidentiary hearing was not necessary in this case because the facts were, in all essential respects, undisputed. In such circumstances, the prima facie standard is both appropriate and preferred. *Id.* at 145; *Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675–676 (1st Cir. 1992).

The next question is whether the district court reached the proper result. In diversity cases such as this, the district court's personal jurisdiction over a nonresident defendant is governed by the forum state's long-arm statute. *Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir.1995). Under the Massachusetts statute,

[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's ... transacting any business in this Commonwealth.

Mass. Gen. Laws Ann. ch. 223A, § 3(a) (1985). The statute imposes constraints on personal jurisdiction that go beyond those imposed by the Constitution. *Gray v. O'Brien,* 777 F.2d 864, 866 (1st Cir.1985). We must therefore find sufficient contacts between the defendant and the forum state to satisfy both the Massachusetts long-arm statute and the Constitution. *Sawtelle,* 70 F.3d at 1387.

To satisfy the requirements of the long-arm statute, Section 3(a), the defendant must have transacted business in Massachusetts and the plaintiffs' claim must have arisen from the transaction of business by the defendant. *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 625 N.E.2d 549, 551 (1994). In *Tatro,* a Massachusetts plaintiff sued a California hotel for injuries sustained in California. The Court concluded that the hotel's solicitation of business from Massachusetts residents satisfied the "transacting any business" requirement of Section 3(a), *id.* 625 N.E.2d at 551–552, and that the "arising from" requirement was satisfied where, but for the hotel's solicitations and acceptance of reservations, the plaintiff would not have been injured in California. *Id.* at 554. The factual scenario in the present case is analogous in all essential respects, and we therefore have little difficulty concluding that sufficient contacts exist to satisfy Section 3(a)'s requirements.

Turning to the constitutional restraints, this Court follows a tripartite analysis for determining the existence of specific personal jurisdiction (plaintiffs do not allege general personal jurisdiction):

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's forum-state contacts must

represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. *Pritzker v. Yari,* 42 F.3d 53, 60–61 (1st Cir. 1994) (quoting *United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1089 (1st Cir.1992)), *cert. denied,* —— U.S. ——, 115 S.Ct. 1959, 131 L.Ed.2d 851.

## A. Relatedness*

What this Court calls the "relatedness" test is one aspect of demonstrating minimum contacts pursuant to *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. The other aspect, discussed below, focuses on the deliberateness of the defendant's contacts, or purposeful availment. Tak How's principal argument on appeal is that relatedness requires a proximate cause relationship between its contacts with Massachusetts and the Nowaks' cause of action.

In arguing for a proximate cause relatedness test, Tak How relies on a series of First Circuit cases beginning with *Marino v. Hyatt Corp.,* 793 F.2d 427 (1st Cir.1986). See *Crocker v. Hilton Int'l Barbados, Ltd.,* 976 F.2d 797 (1st Cir.1992); *Fournier v. Best Western Treasure Island Resort,* 962 F.2d 126 (1st Cir.1992); *Pizarro v. Hoteles Concorde Int'l, C.A.,* 907 F.2d 1256 (1st Cir.1990). In each of these cases, this Court construed the language of a state long-arm statute requiring, as does the Massachusetts statute quoted above, that the cause of action "arise" from the forum-state contacts. Construing those statutes, we rejected plaintiffs' arguments that the injury at issue would not have occurred "but for" the forum-state contacts. Instead, we held that the defendant's conduct must be the legal or proximate cause of the injury. *Pizarro,* 907 F.2d at 1260.

■ At least for purposes of construing the Massachusetts long-arm statute, the Supreme Judicial Court of Massachusetts dealt our restrictive interpretation a fatal blow in *Tatro, supra.* The Court decided that the "but for" test is more consistent with the

language of the long-arm statute and explicitly rejected our interpretation of the statute in the *Marino* line of cases. 625 N.E.2d at 553. Personal jurisdiction was proper in *Tatro* because the California hotel had solicited business in Massachusetts and had agreed to provide the plaintiff with accommodations; but for those acts, the plaintiff would not have been injured. *Id.* at 554.

Tak How contends that *Tatro* was not fatal to *Marino* and its progeny. It concedes, as it must, that *Tatro* is controlling insofar as it deals with the construction of the Massachusetts long-arm statute, but insists that the relatedness discussion in *Marino* had constitutional significance as well. Its position is not without support. In *Pleasant Street,* we stated that the Massachusetts statute's relatedness requirement "mirrors a key constitutional requirement for the exercise of specific jurisdiction." 960 F.2d at 1087. Then, in explaining constitutional relatedness, we set forth proximate cause principles derived from the *Marino* line of cases. See *id.* at 1089.

The Nowaks, on the other hand, argue that these cases have no constitutional significance. They find support from a footnote in *Ticketmaster-New York, Inc. v. Alioto,* 26 F.3d 201, 207 n. 8 (1st Cir.1994):

In our view, [the *Marino* line of cases]— which interpret the term "arising from" as that term is used in the long-arm statutes of Massachusetts—deal with state-law issues and have no real implication for the relatedness requirement specifically or for constitutional analysis generally.

(citations omitted).

Despite the apparent conflict, these cases are arguably reconcilable. After all, *Ticketmaster* did not directly reject *Pleasant Street* or the proximate cause test, but merely stated the evident fact that the *Marino* line of cases centered on interpretations of state law. It might follow, then, that our discussion in *Pleasant Street* should govern our course here. *Pleasant Street,* however, as well as *Ticketmaster,* described the relatedness concept in only the most general way. Neither case specifically defined the precise inquiry under the relatedness test in this

---

* Editor's Note: This section was authorized by Judge Coffin. See footnote 1.

circuit. Fortunately, however, these cases, and others, articulated certain principles that guide our inquiry.

As an initial matter, "[w]e know ... that the [relatedness] requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." *Ticketmaster*, 26 F.3d at 206. The requirement serves two purposes.

First, relatedness is the divining rod that separates specific jurisdiction cases from general jurisdiction cases. Second, it ensures that the element of causation remains in the forefront of the due process investigation.

*Id.* Most courts share this emphasis on causation, but differ over the proper causative threshold. Generally, courts have gravitated toward one of two familiar tort concepts— "but for" or "proximate cause."

The Ninth Circuit is the most forceful defender of the "but for" test. In *Shute v. Carnival Cruise Lines*,[2] the court stated that "but for" serves the basic function of relatedness by "preserv[ing] the essential distinction between general and specific jurisdiction." 897 F.2d 377, 385 (9th Cir.1990). A more stringent standard, the court asserted, "would represent an unwarranted departure from the core concepts of 'fair play and substantial justice,'" because it would preclude jurisdiction in cases where it would be reasonable. *Id.* at 386. In turn, in those cases where "but for" might lead to an unreasonable result, the court predicted that the third prong—the reasonableness inquiry—would guard against unfairness.

*Shute* and its progeny represent the only explicit adoption of the "but for" test. Nonetheless, cases from other circuits suggest a similar approach. In *Prejean v. Sonatrach, Inc.*, the Fifth Circuit noted:

Logically, there is no reason why a tort cannot grow out of a contractual contact. In a case like this, a contractual contact is a "but for" causative factor for the tort since it brought the parties within tortious

"striking distance" of one another. While the relationship between a tort suit and a contractual contact is certainly more tenuous than when a tort suit arises from a tort contact, that only goes to whether the contact is by itself sufficient for due process, not whether the suit arises from the contact.

652 F.2d 1260, 1270 n.21 (5th Cir.1981). Subsequent cases, however, have not always followed this teaching. See *Luna v. Compañia Panameña De Aviación, S.A.*, 851 F.Supp. 826, 832 (S.D.Tex.1994) (employing a proximate cause standard); *Kervin v. Red River Ski Area, Inc.*, 711 F.Supp. 1383, 1389–1390 & n. 11 (E.D.Tex.1989) (same).

The Sixth Circuit applies a "substantial connection" standard. See *Third Nat'l Bank v. WEDGE Group Inc.*, 882 F.2d 1087, 1091 (6th Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953; *Southern Mach. Co. v. Mohasco Indus., Inc.* 401 F.2d 374, 384 n. 27 (6th Cir.1968). The court's discussion in *Lanier v. American Board of Endodontics*, 843 F.2d 901, 908–911 (6th Cir. 1988), however, suggests that a "but for" relationship survives the due process inquiry.

Finally, the Seventh Circuit has upheld jurisdiction under the Illinois long-arm statute, and the Due Process Clause, for claims that "lie in the wake of the commercial activities by which the defendant submitted to the jurisdiction of the Illinois courts." See *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215–1216 (7th Cir.1984) (breach of warranty); *In re Oil Spill by Amoco Cadiz*, 699 F.2d 909, 915–916 (7th Cir.1983) (indemnity action), *cert. denied*, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 172. Whether this indeterminate standard would encompass tortious negligence committed outside the forum is unknown. Cf. *Simpson v. Quality Oil Co.*, 723 F.Supp. 382, 388 & n. 4 (S.D.Ind. 1989) (suggesting that relatedness is limited to those contacts substantively related to the cause of action).

**2.** *Shute* was reversed by the Supreme Court on alternative grounds. 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622. As reflected by subsequent cases, the Ninth Circuit still adheres to the "but for" test. *See Ballard v. Savage*, 65 F.3d

1495, 1500 (9th Cir.1995); *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir.1995). *But see Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir.1995) (questioning *Shute's* authority).

On the other hand, the Second and Eighth Circuits, as well as this one, appear to approve a proximate cause standard. See *Pleasant Street*, 960 F.2d at 1089; *Pearrow v. National Life & Accident Ins. Co.*, 703 F.2d 1067, 1069 (8th Cir.1983); *Gelfand v. Tanner Motor Tours, Ltd.*, 339 F.2d 317, 321–322 (2d Cir.1964). The courts in *Pearrow* and *Gelfand* found that, for purposes of the long-arm statute at issue, non-forum negligence claims did not arise from in-forum solicitation or ticket sales. District courts from the Third and Tenth circuits have reached similar results. See *Wims v. Beach Terrace Motor Inn, Inc.*, 759 F.Supp. 264, 267–268 (E.D.Pa.1991); *Dirks v. Carnival Cruise Lines*, 642 F.Supp. 971, 975 (D.Kan. 1986).

This circuit, whether accurately or not, has been recognized as the main proponent of the proximate cause standard. We think the attraction of proximate cause is two-fold. First, proximate or legal cause clearly distinguishes between foreseeable and unforeseeable risks of harm. See *Peckham v. Continental Casualty Ins. Co.*, 895 F.2d 830, 836 (1st Cir.1990). Foreseeability is a critical component in the due process inquiry, particularly in evaluating purposeful availment, and we think it also informs the relatedness prong. See *Pleasant Street*, 960 F.2d at 1089. As the Supreme Court said in *Burger King Corp. v. Rudzewicz*,

> [the Due process Clause] requir[es] that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign...." [T]his "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.

471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528. Adherence to a proximate cause standard is likely to enable defendants better to anticipate which conduct might subject them to a state's jurisdiction than a more tenuous link in the chain of causation. Certainly, jurisdiction that is premised on a contact that is a legal cause of the injury underlying the controversy—*i.e.*, that "form[s] an 'important, or [at least] material, element of proof' in the plaintiff's case," *Pleasant Street*, 960 F.2d at 1089 (citation omitted)—is presumably reasonable, assuming, of course, purposeful availment.

■ As our discussion suggests, and notwithstanding any contrary implication from the footnote in *Ticketmaster*, we think the proximate cause standard better comports with the relatedness inquiry because it so easily correlates to foreseeability, a significant component of the jurisdictional inquiry. A "but for" requirement, on the other hand, has in itself no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain. True, as the Ninth Circuit has noted, courts can use the reasonableness prong to keep Pandora's jar from opening too wide. But to say that the harm that might be done by one factor can be prevented by another is not, after all, an affirmative justification for the former.

That being said, we are persuaded that strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive. The concept of proximate cause is critically important in the tort context because it defines the scope of a defendant's liability. In contrast, the first prong of the jurisdictional tripartite test is not as rigid: it is, "relatively speaking, ... a 'flexible, relaxed standard.'" *Sawtelle*, 70 F.3d at 1389 (citation omitted). We see no reason why, in the context of a relationship between a contractual or business association and a subsequent tort, the absence of proximate cause per se should always render the exercise of specific jurisdiction unconstitutional.

When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong

to survive the due process inquiry at least at the relatedness stage.

This concept represents a small overlay of "but for" on "proximate cause." In a sense it is a narrower and more specific identification of the Seventh Circuit's formulation for jurisdiction-worthiness of claims lying "in the wake" of commercial activities in the forum. It may be that other kinds of fact patterns will be found to meet the basic factor of foreseeability, but we have no occasion here to pronounce more broadly.

■■■ This case is illustrative of our reasoning. Through its ongoing correspondence with Kiddie Products, Tak How knew that Kiddie Products employees would stay at its hotel, and could easily anticipate that they might use the pool, a featured amenity of the hotel. The district court thoroughly described this connection.

> The Hotel's solicitation of Kiddie's business and the extensive back-and-forth resulting in Burke's reserving a set of rooms for Kiddie employees and their spouses set in motion a chain of reasonably foreseeable events resulting in Mrs. Nowak's death. The possibility that the solicitation would prove successful and that one or more of the guests staying at the Hotel as a result would use the pool was in no sense remote or unpredictable; in fact, the Hotel included the pool as an attraction in its promotional materials.

899 F.Supp. at 31. While the nexus between Tak How's solicitation of Kiddie Products' business and Mrs. Nowak's death does not constitute a proximate cause relationship, it does represent a meaningful link between Tak How's contact and the harm suffered. Given these circumstances, we think it would be imprudent to reject jurisdiction at this early stage of the inquiry.

By this approach, we intend to emphasize the importance of proximate causation, but to allow a slight loosening of that standard when circumstances dictate. We think such flexibility is necessary in the jurisdictional inquiry: relatedness cannot merely be reduced to one tort concept for all circumstances. Though we are recognizing a narrow exception to the proximate cause test, we note an additional protection for defendants' rights: "the relatedness requirement . . . authorizes the court to take into account the strength (or weakness) of the plaintiff's relatedness showing in passing upon the fundamental fairness of allowing the suit to proceed." *Ticketmaster*, 26 F.3d at 207.

We recognize it will not always be easy to apply this flexible approach to particular circumstances, but that is a function of the complexity of this area of the law. The jurisdictional inquiry is often a difficult fact specific analysis in which "[t]he greys are dominant and even among them the shades are innumerable." *Pleasant Street*, 960 F.2d at 1088 (citing *Estin v. Estin*, 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561).

### B. Purposeful Availment

■■■ The next issue is whether Tak How's contacts with Massachusetts constitute purposeful availment. The purposeful availment requirement ensures that jurisdiction is not premised on "random, isolated, or fortuitous" contacts with the forum state, *Sawtelle*, 70 F.3d at 1391 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790), but rather guarantees that the exercise of jurisdiction is "fair, just, or reasonable." *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 329, 100 S.Ct. 571, 577, 62 L.Ed.2d 516). Our two focal points are voluntariness and foreseeability. *Ticketmaster*, 26 F.3d at 207. The defendant's contacts with the forum state must be voluntary—that is, not based on the unilateral actions of another party or a third person. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183; *Vencedor Mfg. Co. v. Gougler Indus., Inc.*, 557 F.2d 886, 891 (1st Cir.1977). In addition, the defendant's contacts with the forum state must be such that he should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490; *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir.1980).

■■■ We think that Tak How's unprompted June 1993 correspondence with Kiddie Products, which led directly to the ill-fated Hong Kong trip in September 1993, was at

least minimally sufficient to satisfy this requirement. The June 1993 correspondence contained promotional materials from the Holiday Inn designed to further entice Kiddie Products employees to stay at the hotel. Even if it may be said that the materials were sent as part of an on-going relationship between the two companies that was originally instigated by Kiddie Products, the continued correspondence by Tak How to Massachusetts does not amount to the kind of unilateral action that makes the forum-state contacts involuntary. Tak How had an obvious financial interest in continuing business with Kiddie Products, and the June 1993 correspondence is the best example of an unprompted solicitation designed to facilitate that business relationship. In order to be subject to Massachusetts' jurisdiction, a defendant need only have one contact with the forum state, so long as that contact is meaningful. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223; *Burger King*, 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18.

Whether prompted or unprompted, Tak How's on-going correspondence and relationship with Kiddie Products, designed to bring Massachusetts residents into Hong Kong, rendered foreseeable the possibility of being haled into a Massachusetts court. That Tak How might have to defend itself in a Massachusetts court is certainly foreseeable based on its direct correspondence with Kiddie Products, but its other contacts with Massachusetts reveal an even more substantial attempt by Tak How to purposefully avail itself of the privilege of conducting business activities in the state: Tak How advertised its hotel in national and international publications that circulated in Massachusetts; it solicited by direct mail some of its previous guests residing in Massachusetts; and Tak How listed its hotel in various hotel guides used at travel agencies in Massachusetts. Exercising jurisdiction is appropriate where the defendant purposefully derives economic benefits from its forum-state activities. *Pritzker*, 42 F.3d at 61–62 (citing *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184).

### C. The Gestalt Factors

Our conclusion that minimum contacts exist in this case does not end the inquiry. Personal jurisdiction may only be exercised if it comports with traditional notions of "fair play and substantial justice." *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160. Out of this requirement, courts have developed a series of factors that bear on the fairness of subjecting a nonresident to a foreign tribunal. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184; *Pleasant Street*, 960 F.2d at 1088. These "gestalt factors" are as follows:

(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Id.* (citing *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184). The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close. In such cases, the gestalt factors may tip the constitutional balance. *Ticketmaster*, 26 F.3d at 209. The Supreme Court's decision in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92, is one such example. In *Asahi*, the question of minimum contacts divided the Court, but eight of the Justices agreed that exercising personal jurisdiction would not comport with notions of fair play and substantial justice. This Court has thus adopted a sliding scale approach: "[T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster*, 26 F.3d at 210. The reverse is equally true: a strong showing of reasonableness may serve to fortify a more marginal showing of relatedness and purposefulness. See *id.* (citing *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir.1990)); *see also Sawtelle*, 70 F.3d at 1396.

1. The Burden of Appearance. It would undoubtedly be burdensome for Tak How to defend itself in Massachusetts: Tak How's only place of business is in Hong Kong. This Court has recognized, however, that it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction. *Pritzker,* 42 F.3d at 64. Thus for this particular gestalt factor to have any significance, the defendant must demonstrate that "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Id.* Tak How alleges nothing special or unusual about its situation beyond the ordinary cost and inconvenience of defending an action so far from its place of business. Under *Pritzker,* that is not enough: it simply cannot be the case that every Hong Kong corporation is immune from suit in Massachusetts. But see *Ticketmaster,* 26 F.3d at 210 (noting the importance of considering the distance the defendant must travel in giving weight to this factor in the analysis). We are also persuaded that the burden on Tak How will be minimized by, for example, the availability of transcripts from the Coroner's Court for use in the Massachusetts proceeding.

We have also noted that the burden of appearance is an important gestalt factor primarily because it allows a court to guard against harassing litigation. *Ticketmaster,* 26 F.3d at 211 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055). Were there any indication in the record that the Nowaks brought the present suit to harass Tak How, the burden of appearance in Massachusetts might weigh in Tak How's favor; however, the record does not so indicate.

2. Interest of the Forum. Although a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, *Ticketmaster,* 26 F.3d at 211, that interest is diminished where the injury occurred outside the forum state. *Sawtelle,* 70 F.3d at 1395. Nonetheless, our task is not to compare the interest of the two sovereigns—the place of the injury and forum state—but to determine whether the forum state *has* an interest. *Id.* While it is true that the injury in this case

occurred in Hong Kong, it is equally true (unlike *Sawtelle*) that significant events took place in Massachusetts giving it an interest in this litigation. Tak How solicited business in the state. As the district court noted, Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims. *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182. Given the forum-state activities that took place prior to Mrs. Nowak's death, we conclude that Massachusetts has a strong interest in exercising jurisdiction even though the injury took place in Hong Kong.

3. The Plaintiffs' Convenience. This Court must accord deference to the Nowaks' choice of a Massachusetts forum. *See, e.g., Foster–Miller,* 46 F.3d at 151. Regardless, it is obvious that a Massachusetts forum is more convenient for the Nowaks than another forum, particularly a Hong Kong forum. Further, there exists substantial doubt that the Nowaks could adequately resolve the dispute in Hong Kong: Hong Kong's laws regarding contingency fees and posting of security bonds with the court make litigation economically onerous for plaintiffs, and the future of Hong Kong's political system is also uncertain.

4. The Administration of Justice. This factor focuses on the judicial system's interest in obtaining the most effective resolution of the controversy. Usually this factor is a wash, *Ticketmaster,* 26 F.3d at 211; *Sawtelle,* 70 F.3d at 1395, but in one case we held that preventing piecemeal litigation might favor one jurisdiction over another. *Pritzker,* 42 F.3d at 64. Tak How argues that a Massachusetts action would require the application of Hong Kong law, the use of interpreters, and the transportation of key witnesses from Hong Kong that are not subject to compulsory process. On the other hand, the Nowaks point to possible political instability in Hong Kong as the British Colony prepares to revert to Chinese sovereignty. Interpreters and transportation of witnesses would likely also be necessary in Hong Kong. We conclude that the question of efficient adminis-

tration of justice favors a Massachusetts forum. Given the likelihood that the Nowaks would face great obstacles in Hong Kong due to possible political instability, as well as Hong Kong laws on contingency fees and security bonds, efficiency concerns require a Massachusetts forum. See *United Elec. Workers v. 163 Pleasant St. Corp.*, 987 F.2d 39, 46–47 (1st Cir.1993) (finding that fourth gestalt factor weighed against a foreign jurisdiction where "it is far from clear that there will be any judicial resolution, let alone the most effective judicial resolution, of this controversy" if the case could not proceed in Massachusetts).

5. *Pertinent Policy Arguments.* The final gestalt factor addresses the interests of the affected governments in substantive social policies. Massachusetts has an interest in protecting its citizens from out-of-state providers of goods and services as well as affording its citizens a convenient forum in which to bring their claims. These interests are best served by the exercise of jurisdiction in Massachusetts. On the other hand, Hong Kong has an interest in protecting visitors to promote and preserve its tourism industry, in protecting its businesses, and in providing all parties with a convenient forum. Only one of Hong Kong's interests—protecting its businesses—might be compromised by a Massachusetts forum, while Massachusetts' primary interest—protecting its citizens—might be compromised by a Hong Kong forum. We thus conclude that the final Gestalt factor tips only slightly in the Nowaks' favor.

On balance, we think the gestalt factors weigh strongly in favor of a Massachusetts forum. When considered in combination with the Nowaks' adequate showing on the first two prongs of the constitutional test, we think that, on the specific facts of this case, the exercise of jurisdiction in Massachusetts is reasonable and does not offend the notions of fair play and substantial justice. The district court therefore properly denied Tak How's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

## III.

Tak How next appeals the denial of its motion to dismiss for *forum non conveniens.* The doctrine of *forum non conveniens* permits a trial court, on a discretionary basis, to dismiss a case where an alternative forum is a available in another country that is fair to the parties and substantially more convenient for them or the courts. *Howe v. Goldcorp Invs., Ltd.*, 946 F.2d 944, 947 (1st Cir.1991), *cert. denied*, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 418. Application of the doctrine is committed to the sound discretion of the trial court, whose decision will not be reversed absent a clear abuse of discretion. *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1349 (1st Cir.1992) (*Mercier III*) (appeal after remand of *Mercier II, infra*; we have previously referred to the district court's opinion as *Mercier I*), *cert. denied*, 508 U.S. 912, 113 S.Ct. 2346, 124 L.Ed.2d 255. This Court finds an abuse of discretion only where the district court (1) failed to consider a material factor, (2) substantially relied on an immaterial factor, or (3) assessed the appropriate factors but clearly erred in weighing those factors. *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 423 (1st Cir.1991) (*Mercier II*). Since there is a strong presumption in favor of a plaintiff's forum choice, the defendant must bear the burden of proving both the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum. *Id.* at 423–424; *Mercier III*, 981 F.2d at 1349.

We have emphasized that the doctrine of *forum non conveniens* is used to avoid "serious unfairness" and that plaintiff's choice of a forum will be disturbed only rarely. *Howe*, 946 F.2d at 950 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259, 102 S.Ct. 252, 267, 70 L.Ed.2d 419; *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055). The Supreme Court has provided a list of relevant considerations. "Private interest" factors include relative ease of access to sources of proof, availability of compulsory process, comparative trial costs, ability to enforce a judgment, "and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. "Public interest" factors include the

practical difficulties of unnecessarily imposing upon a busy court the obligation to hear a case more fairly adjudicated elsewhere, the imposition on jurors called to hear a case that has no relation to their community, and the familiarity of the court with applicable laws. *Id.* at 508–509, 67 S.Ct. at 843.

■ One final principle informs our analysis in this case. The Supreme Court has stated that,

Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems.

*Koster v. Lumbermens Mut. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067.

■ Based on these principles, we are unable to say that the district court abused its discretion. Tak How's first argument is that the district court failed to articulate its reasons for denying the motion to dismiss. It is true that the district judge chose to rule on the motion orally rather than issue a written opinion; however, it is apparent from the hearing transcript that the judge considered relevant factors. Before ruling on the motion, the judge questioned counsel about the plaintiffs' right to have a jury trial in Hong Kong, and he stated that granting the motion would be outcome determinative because, as a practical matter and due to additional burdens under Hong Kong laws, it would be very difficult for the Nowaks to bring suit there. The hearing transcript is certainly not as detailed as the written opinion denying the jurisdictional motion, but the court was entitled to rule on the motion orally.

The question here is whether the district court failed to consider a material factor or failed to correctly weigh the factors. Given that Tak How has the burden of proving the elements of *forum non conveniens*, we shall review the factors alleged to justify dismissal that Tak How has put forth, bearing in mind that *Koster, supra,* places a heavy burden on defendants where, as here, plaintiffs brought suit in their home forum. There is no question that Hong Kong is an available forum, as Tak How is subject to service of process in Hong Kong. *Mercier II,* 935 F.2d at 424. There also appears to be no dispute that Hong Kong would provide an adequate forum in the sense that its courts recognize a similar cause of action. Tak How next contends that the private interest factors of *Gilbert, supra,* weigh in favor of a Hong Kong forum: it notes that it would bear the expense of transporting witnesses to the United States, that it might face difficulty in joining third-party defendants in a Massachusetts court, and that a Hong Kong court might not enforce the judgment of a Massachusetts court. These factors do not constitute the type of "oppressiveness and vexation" required by *Koster* disproportionate to the Nowaks' inconvenience of suing in Hong Kong. The Nowaks would also have to transport witnesses to Hong Kong and later seek to enforce a foreign judgment in their home state. In addition, the Nowaks point to private interest factors that weigh in their favor: they would face financial obstacles because Hong Kong law prohibits contingent fee agreements and requires that they deposit an amount equal to Tak How's costs with the court; also, possible political instability in the region could add further difficulties to litigation in Hong Kong. Regardless of the difficulties the Nowaks might face in Hong Kong, it is enough that Tak How failed to demonstrate either oppressiveness to itself or only a slight or nonexistent interest in convenience on the Nowaks' part. *Koster,* 330 U.S. at 524, 67 S.Ct. at 831.

Nor is Tak How able to demonstrate public interest factors that make trial in Massachusetts inappropriate. It points to the fact that Massachusetts choice-of-law rules require application of Hong Kong law, and that a Hong Kong court would be "more at home" with such laws. This concern is not sufficient to overcome the presumption in favor of

plaintiffs' chosen forum. This Court has previously noted that "the task of deciding foreign law [is] a chore federal courts must often perform." *Mercier III*, 981 F.2d at 1357 (quoting *Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 68 (2d Cir.1981)). We therefore give this factor little weight. *Id.* Tak How points to no other public interest factor that weighs against a Massachusetts forum.

## IV.

For the foregoing reasons, the district court's decision to deny Tak How's motions to dismiss for lack of personal jurisdiction and on the grounds of *forum non conveniens* is AFFIRMED.