Raul MERCED and Vilma Merced, Plaintiffs

v.

JLG INDUSTRIES, INC., Defendant and Third–Party Plaintiff

v.

Hydraulic Fittings Co., Inc. L & L Fittings Manufacturing, Third–Party Defendants.

No. CIV. A. 00–40146–NMG.

United States District Court, D. Massachusetts.

Sept. 28, 2001.

Michael J. Heineman, Mingace & Heineman, PC, Framingham, MA, Jeffrey A. Newman, James Ponsetto, Newman & Ponsetto, Boston, MA, for plaintiffs.

James B. Dolan, Badger and Dolan, Boston, MA, for JLG Industries, Inc.

James E. Riley, Jr., Karol & Riley, P.A., Boston, MA, James E. Riley, Jr., Rebecca L. Andrews, Riley & Associates, Walpole, MA, for Hydraulic Fittings Co., Inc.

## MEMORANDUM & ORDER

GORTON, District Judge.

On August 18, 2000, plaintiffs Raul Merced ("Merced") and Vilma Merced filed suit in this Court against defendant JLG Industries, Inc. ("JLG") seeking damages for personal injuries and loss of con-

sortium as a result of Raul Merced's workplace use of a "manlift" manufactured by JLG. The complaint asserts counts for breach of express and implied warranties of merchantability, negligence, loss of consortium and violation of M.G.L. c. 93A. This Court's subject matter jurisdiction is based on the diversity of the parties; the plaintiffs are residents of Massachusetts and JLG is incorporated and has its principal place of business in Pennsylvania.

According to the complaint, Merced was seriously injured in an industrial accident on January 27, 2000. The accident occurred at his workplace in Sturbridge, Massachusetts, while Merced operated the manlift. The "elbow", a component part of a flow control device on the manlift, allegedly malfunctioned, causing a hydraulic failure and the rapid descent of the elevated bucket assembly that Merced stood upon. As a result of that descent, Merced was severely injured.

After filing its answer, JLG proceeded to file a Third–Party Complaint against Third–Party defendants Hydraulic Fittings Company, Inc. ("Hydraulic Fittings") and L & L Fittings Manufacturing ("L & L Fittings") alleging claims for, *inter alia,* breach of warranty, contribution and indemnification.[1] JLG asserts that it purchased the elbow from Hydraulic Fittings and that it believes L & L Fittings designed and manufactured the elbow.

L & L Fittings has filed, pursuant to Fed.R.Civ.P. 12(b)(2), a motion to dismiss JLG's claims based on lack of personal jurisdiction (Docket No. 8). JLG responds in opposition to that motion that this Court has personal jurisdiction over L & L Fittings pursuant to the Massachusetts long-arm statute, specifically M.G.L. c. 223A, § 3.[2]

## I. *Legal Standard*

When challenged by the defendant, the plaintiff bears the burden of proving the existence of personal jurisdiction. *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir. 1995). In considering the defendants' motion, this Court employs the *prima facie* standard under which the Court considers whether the plaintiffs have proffered evidence that, "if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 675 (1st Cir. 1992). When determining whether a *prima facie* showing has been made, this Court does not act as a factfinder, but instead "accepts properly supported proffers of evidence by a plaintiff as true." *Id.* at 675. Therefore,

> while allegations of fact in an uncontroverted affidavit must be accepted as true for the purposes of a Rule 12 motion, the plaintiff...bears the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant.

*Stanton v. AM General Corp.,* 50 Mass. App.Ct. 116, 117, 735 N.E.2d 407 (Mass. App.Ct.2000) (citations and internal quotations omitted).

1.  L & L Fittings is not a corporation or other legal entity subject to suit. Its true name is DPS Corporation d/b/a L & L Fittings Manufacturing. Third–Party plaintiff JLG acknowledges the relationship between L & L Fittings and DPS Corporation and the Court will treat L & L Fittings as a party for the purposes of this motion, but the parties are directed to correct the caption of the case if the action is pursued.

2.  Because jurisdiction pursuant to M.G.L. c. 223, § 38 is premised upon foreign corporations that are engaged or solicit business in the Commonwealth, the arguments set forth relative to c. 223A, § 3, the Massachusetts long-arm statute, are also dispositive of those made under Chapter 223, § 38.

Because questions of personal jurisdiction involve detailed examination of the particular circumstances of each case, facts of jurisdictional significance must be set forth at some length. *Nowak v. Tak How Inv. Ltd.*, 899 F.Supp. 25, 27 (D.Mass.1995)(hereinafter "Nowak I"), *aff'd*, 94 F.3d 708 (1st Cir.1996).

## II. *Factual Background*

L & L Fittings is a "d/b/a" for DPS Corporation, an Indiana corporation, with its principal place of business in Fort Wayne, Indiana. L & L Fittings manufactures hydraulic fittings and components. L & L Fittings admits, only for the purpose of its motion to dismiss, that it manufactured the subject elbow part and states that the only customer to whom it has sold such parts in the past 15 to 20 years is Hydraulic Fittings. L & L Fittings has sold all such elbows to Hydraulic "F.O.B" Fort Wayne, Indiana.

L & L Fittings asserts that 1) after purchasing its elbows, Hydraulic Fittings repackages them and supplies them to its own customers, 2) Hydraulic Fittings is not its agent, 3) L & L Fittings never exercised any control over the customers to whom Hydraulic Fittings sells those elbows, and 4) it has neither sold the elbows nor derived any income from the sale of any such elbows to anyone in the Commonwealth of Massachusetts. L & L Fittings has never been registered, licensed or qualified by the Commonwealth to do business in Massachusetts.

## III. *Discussion*

### A. Applicable Law

■■ To determine whether a federal district court has jurisdiction over a nonresident defendant in a diversity suit, the court must look to the law of the forum state. *Hahn v. Vermont Law School*, 698 F.2d 48, 49 (1st Cir.1983). Under Massa-chusetts law, jurisdiction over a nonresident defendant is appropriate if it is both authorized by statute and consistent with the due process requirements of the United States Constitution. *Good Hope Indus., Inc. v. Ryder Scott, Co.*, 378 Mass. 1, 5–6, 389 N.E.2d 76 (1979); *Nowak v. Tak How Inv., Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996) (hereinafter "Nowak II").

### 1. The Massachusetts Long–Arm Statute

The Massachusetts long-arm statute provides, in relevant part, that a Massa-chusetts Court may exercise personal jurisdiction:

> over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth [or] (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth....

M.G.L. c. 223A, §§ 3(a) and (d).

■ In the effort to "effectuate... [the Commonwealth's] legitimate desire to protect its citizens," the statute is to be construed broadly. *See Noonan v. The Winston Company*, 135 F.3d 85, 92 (1st Cir.1998). However, the limitations on personal jurisdiction imposed by the Massachusetts long-arm statute exceed the due process requirements of the United States Constitution in that the former requires that the plaintiff (or, in this case the third-party plaintiff) must demonstrate that the defendant has a tangible connection to the forum through commercial or other appre-

ciable contacts with the Commonwealth. *Nowak II*, 94 F.3d at 712.

### a. Transaction of Business in Massachusetts

In order for jurisdiction to exist pursuant to § 3(a), the facts must satisfy two requirements: (1) the defendant must have transacted business in Massachusetts, and (2) the plaintiff's claim must have arisen from the defendant's transaction of such business. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767, 625 N.E.2d 549 (1994). In other words, the plaintiff has the burden of demonstrating that his cause of action arises out of defendant's business transactions in Massachusetts. *Raleigh Rug Co. v. R.A. Civitello Co.*, 23 Mass.App.Ct. 1025, 505 N.E.2d 553, 554 (1987).

This Court need not consider this provision in great depth. Although courts have construed the "transacting any business" clause in § 3(a) broadly, the plaintiff must nonetheless show a rational nexus between the defendant's transaction of business in the Commonwealth and the plaintiff's injury as literally provided for by § 3(a). *Tatro*, 416 Mass. at 767, 625 N.E.2d 549; *Heins v. Wilhelm Loh Wetzlar Optical Machinery*, 26 Mass.App.Ct. 14, 522 N.E.2d 989, 992 (1988). Merced's injury did not occur as a result of L & L Fittings' business transactions in Massachusetts, but rather stems from its out-of-state activities. *Catrone v. Ogden Suffolk Downs, Inc.*, 647 F.Supp. 850, 858–859 (D.Mass.1986). Thus, JLG has failed to satisfy the minimum statutory requirements of § 3(a).

### b. Whether this Court has Personal Jurisdiction over L & L Fittings under M.G.L. c. 223A, § 3(d)

For purposes of the motion to dismiss, L & L Fittings does not dispute that the threshold requirement of § 3(d), that the defendant's out-of-state act caused the plaintiff's in-state harm, is met. L & L Fittings manufactured, outside of Massachusetts, an allegedly defective elbow that eventually led to Merced's injury in the Commonwealth of Massachusetts.

The parties contest whether L & L Fittings satisfies the second requirement of § 3(d). L & L Fittings asserts that it lacked sufficient additional contacts with the forum, by not (1) engaging or soliciting business in Massachusetts, (2) engaging in any other persistent course of conduct in Massachusetts, or (3) deriving substantial revenue from goods used or consumed in Massachusetts. M.G.L. c. 223A, § 3(d). Because the second requirement of § 3(d) is disjunctive, the plaintiff need only satisfy one of its prongs. *See Noonan*, 135 F.3d at 92.

JLG contends that L & L Fittings' activities in Massachusetts constitute engaging in a persistent course of conduct here. Over the past five years, L & L Fittings has sold and distributed its products to five customers in the Commonwealth. Since 1994, L & L Fittings has maintained a website and, as of December 2000, it not only included a virtual catalog, but also could support online ordering. On the site's online order form, L & L Fittings has a pre-set address form that includes Massachusetts as a fixed field. L & L Fittings additionally offers a toll free number accessible to Massachusetts customers.

However, neither the existence of L & L Fittings' website nor its toll free number proves that L & L Fittings engaged in a persistent course of conduct in Massachusetts. The website only became interactive and began to support online ordering after this action accrued and websites and toll free numbers are common fixtures of

modern commerce. Businesses purely local in character may nevertheless have a website or a toll free number for the convenience of their customers or as an inexpensive promotional tool. *See Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996).

■ Despite JLG's suggestions to the contrary, the capability of L & L Fittings' website to support an order from Massachusetts without more does not establish a course of conduct in Massachusetts. It is well settled under Massachusetts law that a website indicates business activity in the Commonwealth for the purposes of § 3(d). However, courts have traditionally considered a website as merely one factor that may establish a persistent course of commercial conduct in the Commonwealth. *Hasbro, Inc. v. Clue Computing,* 994 F.Supp. 34, 43–44 (D.Mass.1997); *Snyder v. ADS Aviation Maintenance,* 2000 WL 145110, *3 (Mass.Super.2000). To hold otherwise would conflate a website, an advertising and informational medium, with ongoing solicitation or continuous business activity.

On the other hand, JLG makes a colorable argument that L & L Fittings engages in a persistent course of business activity in Massachusetts. Certainly, L & L Fittings small but steady stream of business transactions in Massachusetts suggests that its commercial contacts with the forum constitute a course of conduct in the Commonwealth. The design of L & L Fittings' website further indicates that L & L Fittings seeks more business in Massachusetts. Nevertheless, L & L Fittings' transactions in Massachusetts appear to be fragmented rather than to be a persistent course of conduct as contemplated by the statute and JLG cannot rely on the second prong of § 3(d) to establish long-arm jurisdiction over L & L Fittings. That leaves the third prong for consideration.

■ JLG has presented adequate evidence to satisfy the substantial revenue requirement of § 3(d). Although L & L Fittings makes much of the fact that it has never sold the elbow in the Commonwealth, that is not a bar to jurisdiction under § 3(d). The statute requires only that the manufacturer derive substantial revenue from the use or consumption of its product line in Massachusetts, not that the product at issue be sold in Massachusetts. *See Wilson v. Arburg Maschinen Fabrik Heil & Sonne,* 1985 U.S. Dist. LEXIS 21425 (D.Mass.1985) (stating that to require that the goods be sold in Massachusetts would undermine the purpose of M.G.L. c. 223A, § 3(d) that injured Massachusetts residents have redress against a foreign manufacturer).

JLG alleges that numerous Massachusetts businesses use L & L Fittings' component parts. To support that claim, JLG argues that L & L Fittings sells thousands of hydraulic fittings each year and offers a considerable number of such fittings for sale on its website. Although JLG has offered no specific evidence of the number of L & L Fittings in operation in Massachusetts, it may be reasonably inferred that, given the size of L & L Fittings' component parts business, it generates significant revenues in this forum from the use of its products.

Even L & L Fittings' sales revenues in Massachusetts alone could support the substantial revenue requirement. In *Keds Corp. v. Renee International Trading Corp.,* 888 F.2d 215, 219 (1st Cir.1989), the First Circuit Court of Appeals held that the sale of 6,000 pairs of shoes for $15,000 "easily" met the third prong of § 3(d). The *Keds* court noted that substantial revenue does not refer to a "an absolute amount... all that is required is literal satisfaction of the statutory requirement." *Id.; Mark v. Obear & Sons, Inc.,* 313

F.Supp. 373, 375–376 (D.Mass.1970) (noting that $5,000 in sales satisfies the statute).

From 1995 to 1999, L & L Fittings reported $5,902 in direct sales to Massachusetts customers. Considered in isolation, those paltry sales figures seem insufficient to satisfy the substantial revenue requirement. When combined with JLG's plausible, albeit unsupported, inference that there is widespread use of L & L Fittings in Massachusetts, however, JLG makes a *prima facie* showing that L & L Fittings generates substantial revenues in Massachusetts both from the use and the sale of its products here.

### 2. The Due Process Analysis

The due process clause of the United States Constitution requires certain "minimum contacts" between a nonresident defendant and the forum state such that the exercise of personal jurisdiction over that defendant accords with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ In analyzing minimum contacts, courts have distinguished between two kinds of personal jurisdiction: "general" and "specific". General jurisdiction exists when the litigation

> is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in a systematic activity, unrelated to the suit, in the forum state. . . .

*United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992)(*"Pleasant St. I"*).

■ Specific jurisdiction, by contrast, narrows a court's focus to a "specific set of interactions as a basis for personal jurisdiction." *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir.

1995). The existence of specific personal jurisdiction depends upon the plaintiff's ability to satisfy two cornerstone conditions:

> first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.

*Foster–Miller, Inc.,* 46 F.3d at 144 (citations and quotation marks omitted). The second condition implicates three distinct components: relatedness, purposeful availment (sometimes called "minimum contacts") and reasonableness. *Id.*

#### a. Relatedness

■ Relatively speaking, the relatedness inquiry is a "flexible, relaxed standard". *Pritzker v. Yari,* 42 F.3d 53, 60–61(1st Cir.1994). Because of this pliancy, a plaintiff may satisfy the relatedness inquiry although the defendant's actions outside of the forum caused the plaintiff's harm in the forum. *Boston Scientific Corp. v. Bonzel,* 132 F.Supp.2d 45, 51 (D.Mass.2001).

Although the relatedness requirement is "the least developed prong of the due process inquiry," *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir. 1994), the First Circuit has observed that it serves the important function of directing a court's attention to the nexus between a plaintiff's claim and the defendant's contacts with the forum. *Pleasant St. I,* 960 F.2d at 1089. Specifically, the relatedness requirement

> is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state.

*Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995). Indeed, in *Pleasant St. I,* the First Circuit explained that, at this stage of the analysis, it is important to bear in mind the nature of the plaintiff's claim and to consider whether the plaintiff's cause of action can "conceivably be said to have arisen directly from, or been caused proximately by," the defendant's contacts with the forum. 960 F.2d at 1089.

This proximate cause test requires an "arising from" analysis distinct from the "but for" analysis undertaken under the Massachusetts long-arm statute. *Nowak I* 899 F.Supp. at 30. Nevertheless, in light of the flexible nature of the relatedness inquiry, the First Circuit has declined to require strict adherence to a proximate cause standard, instead applying a "small overlay of 'but for' on 'proximate cause'". *Nowak II,* 94 F.3d at 715–16. The rationale is that

> [w]hen a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.

*Id.*

In *Nowak,* the plaintiff's employer, Massachusetts-based Kiddie Products, Inc., made reservations, after a series of exchanges by telecopier, for several employees including the plaintiff and his wife, at a hotel in Hong Kong owned by the defendant. While a registered guest at the hotel, the plaintiff's wife drowned in the hotel swimming pool. *Id.* at 711. Applying the relatedness test, the First Circuit upheld the district court's finding that the hotel's solicitation of Kiddie's business and the resultant commercial relationship between the hotel and Kiddie led to a foreseeable chain of events causing the fatal accident. *Id.* at 716. The court concluded that, although such solicitation was not the proximate cause of Mrs. Nowak's death, it did "represent a meaningful link" to the harm suffered sufficient to maintain jurisdiction. *Id.*

■ The facts in the case at bar fall squarely within the First Circuit's modification of the proximate cause standard for relatedness. L & L Fittings' contacts with Massachusetts arise from commercial use of its products. Merced alleges that one of L & L Fittings' products caused his injury. If Merced had not operated a machine containing an L & L Fittings' component part, he alleges he may not have suffered the harm that led to the instant lawsuit. There is thus a nexus between L & L Fittings' purported contacts and the alleged tort.

### b.  Purposeful Availment

■ The analysis of the second element of the constitutional prong of specific personal jurisdiction involves a determination of whether L & L Fittings' contacts with the forum state represent a "purposeful availment" by L & L Fittings of the privilege of conducting business in Massachusetts. *Ticketmaster–New York,* 26 F.3d at 207. The purposeful availment inquiry prevents courts from premising jurisdiction on contacts with the forum state that are "random, isolated, and fortuitous". *Nowak II,* 94 F.3d at 716.

The cornerstones of the "purposeful availment" requirement are voluntariness and foreseeability. *Id.* (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528(1985)). The voluntariness prong ensures that the defendant's contacts with the forum state are "not based on the unilateral actions of another party or a third person". *Id.* (*citing World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The foreseeability prong requires that "the defendant's contacts with the forum state be such that he should reasonably anticipate being haled into court there." *Id.* (*citing World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980)).

Arguably, L & L Fittings has a feasible claim that its contacts with the forum are too fragmented to constitute purposeful availment. It maintains no office, employees, agents, or sales force in Massachusetts and its sales in the Commonwealth are minuscule. Although only a limited part of its general business, L & L Fittings' contacts with Massachusetts are nonetheless systematic and continuous. L & L Fittings avails itself of the benefits of doing business in the forum state by maintaining ongoing direct sales relationships with customers in Massachusetts. Over the past five years, L & L Fittings has, without the aid of independent agents or distributors, sold its products to several Massachusetts companies each year. Its direct sales to those customers could readily lead to litigation in Massachusetts. Consequently, L & L Fittings is on notice that it may be haled into court in the Commonwealth. Although clearly not dispositive, L & L Fittings also enables its Massachusetts customers to purchase goods on its website and that site is, at least, a potential marketing tool in Massa-

chusetts. Considered in its totality, the character and quality of L & L Fittings' contacts with the forum satisfy the purposeful availment due process test.

#### c. Reasonableness

The third and final stage of the personal jurisdiction analysis affords an opportunity for concepts of reasonableness to illuminate that review. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490(1980). The Supreme Court has identified five such considerations, termed by the First Circuit, "the gestalt factors": (i) the defendant's burden of appearing, (ii) the forum state's interest in adjudicating the dispute, (iii) the plaintiff's interest in obtaining convenient and effective relief, (iv) the judicial system's interest in obtaining the most effective resolution of the controversy, and (v) the common interests of all sovereigns in promoting substantive social policies. *Pleasant St. I,* 960 F.2d at 1088 (*citing Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174).

#### (1) The Defendant's Burden of Appearance

L & L Fittings would certainly suffer some inconvenience if it had to defend itself in Massachusetts because its headquarters are located in Indiana. There is nothing in the record to suggest that L & L Fittings or its agents regularly travel to Massachusetts. *Hasbro,* 994 F.Supp. at 45. The First Circuit Court of Appeals "has recognized, however, that it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction." *Nowak II,* 94 F.3d at 718. Thus, for this particular gestalt factor to have any significance, a defendant must show that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." *Id.* (*quoting Pritz-*

*ker,* 42 F.3d at 64. In the present case, L & L Fittings has not asserted any special or unusual circumstance.

### (2) The Forum State's Adjudicatory Interest

The second gestalt factor implicates Massachusetts' interests. Merced's injury occurred in Massachusetts, thus giving Massachusetts an interest in the present litigation. *Nowak II,* 94 F.3d at 718. The First Circuit has noted that

> Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims.

*Id.* (*citing Burger King Corp.,* 471 U.S. at 473, 105 S.Ct. 2174). Consequently, this factor weighs in JLG's favor because the original plaintiff is a Massachusetts resident.

### (3) The Plaintiff's Convenience

The third gestalt factor concerns the interests of the plaintiff in securing a convenient forum. *Hasbro,* 994 F.Supp. at 46. This Court must accord deference to the plaintiff's choice of forum. *Nowak II,* 94 F.3d at 718. For the purposes of the reasonableness inquiry, courts have likewise weighed the third-party plaintiff's interests in obtaining convenient and effective relief. *Sonnabend v. Sorrentino,* 866 F.Supp. 651, 654 (D.Mass.1994); *Zeus Projects Ltd. v. Perez y Cia. de Puerto Rico, Inc.,* 187 F.R.D. 23, 32 (D.P.R.1999). Third-party plaintiff JLG, no less than Merced, benefits from an efficient and effective resolution of the instant controversy.

### (4) The Administration of Justice

The fourth gestalt factor "focuses on the judicial system's interest in obtaining the most effective resolution of the controversy". *Nowak II,* 94 F.3d at 718. Generally, courts consider this factor a wash. *See, e.g., Sawtelle,* 70 F.3d at 1395; *Ticketmaster–New York,* 26 F.3d at 211. In the present suit, resolution of the case in a single forum will promote judicial economy.

### (5) Pertinent Policy Arguments

The final gestalt factor implicates substantive state social policies. *Nowak II,* 94 F.3d at 719. As discussed earlier, Massachusetts has a clear interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders and in affording its citizens a convenient forum in which to bring their claims. Massachusetts further has a compelling interest in protecting its citizens from injuries caused by goods produced by out-of-state manufacturers. On the other hand, Indiana ostensibly has some interest in protecting businesses headquartered within its borders, and in providing a convenient forum for those commercial entities.

### d. Conclusion

The gestalt factors considered *in toto* tip in favor of the third-party plaintiff, JLG. In *Nowak,* the First Circuit found that Massachusetts' interest in protecting its citizens slightly outweighed the interest of Hong Kong in protecting its businesses. *Id.* In the present case, the balance similarly weighs slightly in favor of a Massachusetts forum.

### ORDER

For the reasons stated in the Memorandum above, this Court's assertion of personal jurisdiction over L & L Fittings is appropriate. L & L Fittings' Motion to

Dismiss (Docket No. 8) is, therefore, **DE-NIED.**

So ordered.