## GREENE PROCESS METAL CO. v. WASHINGTON IRON WORKS.

### No. 692.

District Court, W. D. Washington, N. D.

Dec. 4, 1933.

B. S. Grosscup, of Seattle, Wash. (Merton W. Sage, of New York City, of counsel), for plaintiff.

Battle, Hulbert & Helsell, of Seattle, Wash. (Merrell E. Clark, of New York City, and William L. Symons, of Washington, D. C., of counsel), for defendant.

NETERER, District Judge.

The plaintiff, Greene Process Metal Company, is a Missouri corporation, not engaged in industrial enterprise, but merely a patent holding company of Albert E. Greene inventions, stated at bar to be 53 patents.

The suit comprised originally six patents for the smelting of ore, etc. Three of the patents were withdrawn during the taking of depositions, and at the opening of trial two more were dismissed, leaving the patent in issue No. 1,532,052, based on Greene's 1909 application, which patent was issued in 1925. The idea must comprehend the process, and not the manner of operation or the volume of added ingredients known to the prior art for the reducing slag. The idea in this application is a one-slag process; a single slag to dephosphorize, deoxidize, and desulphurize the metal by a reducing gas. The only use of silica claimed in the application is confined to a dephosphorizing and desulphurizing slag. And the claim now made is admittedly not a dephosphorizing slag, but is a deoxidizing and desulphurizing slag. In the prior art two slags were employed; one for oxidizing and dephosphorizing the metal, and the other for deoxidizing and desulphurizing the metal. Greene, in his application, says: "My invention on the contrary contemplates blowing the bath with a gaseous agent which will reduce the flux or other slag forming metallic compound, which gas will also incidentally reduce such oxides of the metal under treatment as may be present in the slag, thereby producing conditions more favorable for the taking

up of phosphorus and sulphur, or either of them, by the reduced slag-forming metal."

The first step of the prior art process dephosphorized the metal and the second desulphurized the metal by a slag conveniently fluid, made by lime and sand subjected to reducing conditions by the use of pulverized or crushed carbon or solid carbon. This is the process used by the defendant, but is not in Greene's original application and is a material variance, and if within the amendment cannot be sustained. Chicago & N. W. Ry. Co. v. Sayles, 97 U. S. 554, 563, 24 L. Ed. 1053. Mr. Justice Bradley, in this case, said: "Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed."

Defendant operates a basic electric furnace in which it melts steel scrap and provides the resulting molten bath of steel with a fluid slag containing basic and acid oxides. The bath is provided with two slags; the first an oxidizing slag not subjected to the action of a reducing agent, but this slag is removed and discarded after it has served its purpose. The second, reducing slag, is provided, and this is subjected to the action of a reducing agent of crushed charcoal or coke or of calcium carbide or other substance carrying similar characteristics, and further formation of protoxids is prevented.

It appears obvious that there is a clear distinction in the two processes. The plaintiff's one-slag process with a gaseous reducing agent; and the other, a two-slag process, with a reducing agent of solid carbon.

In a highly basic slag there is present iron ore or ferric oxide ($Fe_2O_3$), and this is more difficult to reduce from the slag than ferrous oxide ($FeO$), and by increasing the silica content in the slag the ferric oxide is broken up, and more ferrous oxide is found, and the action progresses as the content of the silica in the slag increases; and the plaintiff contends that in the slag of the invention (amended application) with its apparently higher silica content, there is a larger proportion of iron present as ferrous oxide than is usual in the highly basic slag of the prior art, and reduction of iron oxide from the slag by increasing the silica content of the slag facilitates its refining action. The stated higher silica content, however, cannot have any material effect upon the plaintiff's claim, as the use of silica content was known to the prior art. The claimed invention is not new, and attainment of greater excellence, if made, in

that known in the prior art is not patentable. Smith v. Nichols, 21 Wall. (88 U. S.) 112, 22 L. Ed. 566. No new results are shown from the new proportions, or new characteristics of structure or performance. Bethlehem Steel Co. v. Churchward International Steel Co. (C. C. A.) 268 F. 361. And augmentation or diminution of silica for liquidity of the slag for desulphurization is not patentable.

Heroult, in his 1900 application, has a slag consisting of lime liquified by silica and Eichhoff, in 1904–05 used a slag of lime and sand, from which the oxides are reduced by the use of broken charcoal or coke or calcium carbide. And the many prior patents (75) pleaded and the various publications of the prior art pleaded (more than 100), and the "Canadian Report of 1904," and many others introduced in evidence, show that sand or silica was in use prior to the plaintiff's application, and the only difference between Greene's idea, as set forth in the patent, as amended, granting amendment is allowable, is in degree. The testimony from experts, not only in technical scientific knowledge with relation to operation and effect, but with such technical knowledge, together with the experience of expert heaters in operating a furnace, show that it is impracticable to operate the process, as claimed by the plaintiff, successfully by a fixed standard or rule, but that the quantity of silica to be applied for liquidity must be determined by the expert heater in the operation of the furnace at the time to determine the liquidity of the slag, and cannot be fixed by measured portions, as the quantity of silica necessary varies in different baths of steel. The per cent. of silica used by the defendant is less than the per cent. contended for by the plaintiff, and it obviously must be determined by the conditions present during the operation. The per cent. at the time of trial, when inspected by court and counsel, was about 17 to 19 per cent. In some of its operations the defendant has used as high as 20 per cent. to 24 per cent. of silica, perhaps sometimes higher, but the quantity of silica used in making up a slag for steel is immaterial, as it differs only in degree from that known to the prior art. Railroad Supply Co. v. Elyria Iron & Supply Co., 244 U. S. 285, 37 S. Ct. 502, 61 L. Ed. 1136; Willamette Iron & Steel Works v. Columbia Engineering Works (C. C. A.) 252 F. 594; Finley v. MacDougald Construction Co. (C. C. A.) 28 F.(2d) 674; David Belais, Inc., v. Goldsmith Bros., etc., Co. (C. C. A.) 10 F.(2d) 673; Bituminous Products Co. v. Headley Good

Roads Co. (D. C.) 2 F.(2d) 83, affirmed (C. C. A.) 14 F.(2d) 667.

The testimony does not show that the plaintiff's patent has at any time been in operation, or the process applied to oxidation and dephosphorization and deoxidation and desulphurization in one slag in the presence of a reducing gas; and this is an inference against utility. Henry v. City of Los Angeles (C. C. A.) 255 F. 769, Cocks v. Rip Van Winkle, etc., Co. (C. C. A.) 28 F.(2d) 921. And it is obvious from all the testimony that such an accomplishment is impossible.

To me it is obvious that the claims in suit are anticipated by prior patents, prior publications, and prior use, and, also, that the claims of the patent in suit were covered by patent No. 1,185,394, issued to Greene, the same patentee, in 1916, now expired. The patent in suit contains claims not substantially different from the claims comprehended in the 1916 patent, and the instant patent is therefore void. Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121.

From what has been said it is obvious that this court does not think there is infringement as to any of the claims; and the several claims will not be separately discussed, and without extending this memorandum, the court, upon the state of facts, finds no infringement, and an order of dismissal may be on notice presented.