Manchester School District v. Akron, CV-98-151-M   12/01/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


City of Manchester
School District,
      Plaintiff

v.                                      Civil No. 98-151-M

Akron Public Schools and
The State of Ohio Board
of Education,
      Defendants


### O R D E R

Since 1989, the City of Manchester School District ("MSD") has funded the special education provided to Kimberli M., an educationally disabled student who attends school in Pittsfield, New Hampshire.  MSD seeks reimbursement from defendants for a portion of those educational expenses (i.e., those incurred since March 16, 1995).  Defendants assert that the court lacks personal jurisdiction over them and, therefore, move to dismiss MSD's claims.  For the reasons set forth below, defendants' motions to dismiss are granted.


### Factual Background

The relevant facts underlying MSD's claims are largely undisputed.  Kimberly M. was born in Colorado on September 5, 1988.  In January of 1989, Kimberli's parents were visiting friends in Manchester, New Hampshire, when some type of medical emergency occurred, leaving Kimberli with substantial developmental disabilities and cortical blindness.  She was

treated at hospitals in Manchester and Boston and, upon her release, her parents voluntarily placed her in the care of the Brock Home in Pittsfield, New Hampshire, a facility licensed by the New Hampshire Department of Mental Health. At some point, it appears that a "surrogate parent" was appointed to represent Kimberli's educational interests and to insure that she received a free and appropriate public education. Nevertheless, Kimberli's parents retained legal custody.

In 1992, MSD learned that Kimberli's parents had moved from Manchester. Accordingly, it asked the New Hampshire Department of Education to make a "district of liability" decision, to determine whether MSD remained obligated to pay the expenses associated with providing Kimberli's education. The Department of Education concluded that Kimberli's most recent residence (prior to her placement in the Brock Home) had been Manchester and, therefore, under applicable state law, MSD remained obligated to finance her special education costs.

By 1995, Kimberli's parents were divorced and her father, then a resident of Akron, Ohio, was awarded legal and physical custody. In June of 1996, MSD attempted to discharge Kimberli to Akron's care. Kimberli's surrogate parent (under the I.D.E.A.) requested a due process hearing before the New Hampshire Department of Education. The Department of Education determined that Manchester could not disavow its educational funding

2

obligations to Kimberli due to operation of the applicable statute of limitations. (In a separate proceeding, MSD appealed that decision to this court and that matter is pending.)

Having failed in its effort to obtain a legal determination that it is no longer liable for Kimberli's continuing educational expenses, MSD seeks reimbursement from defendants for a portion of the expenses it has incurred. MSD asserts subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), arguing that its claims against the Ohio defendants arise under the Individuals with Disability Education Act, 20 U.S.C. § 1415. Alternatively, MSD says that the court has subject matter jurisdiction under 28 U.S.C. § 1332, because the parties are diverse and the amount in controversy exceeds $75,000.

Defendants, on the other hand, argue that this court is without personal jurisdiction over them, and that plaintiff lacks standing to bring an IDEA claims against them, and in any event, such a claim is time barred. Accordingly, they move to dismiss MSD's suit.

## Standard of Review

I. Plaintiff's Burden

It is well established that when personal jurisdiction is contested, the plaintiff bears the burden of establishing that

3

the court has such jurisdiction.  See Kowalski v. Doherty,
Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986).
Allegations of jurisdictional facts are construed in the
plaintiff's favor, see Buckley v. Bourdon, 682 F.Supp. 95, 98
(D.N.H. 1988), and, if the court proceeds based upon the written
submissions of the parties without an evidentiary hearing, the
plaintiff need only make a prima facie showing that jurisdiction
exists.  See Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products,
Inc., 967 F.2d 671, 674-75 (1st Cir. 1992).  Nevertheless, the
plaintiff's demonstration of personal jurisdiction must be based
on specific facts set forth in the record in order to defeat a
defendant's motion to dismiss.  See Foster-Miller, Inc. v.
Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) ("To
make a prima facie showing of this calibre, the plaintiff
ordinarily cannot rest upon the pleadings, but is obliged to
adduce evidence of specific facts.").  Consequently, "in
reviewing the record before it, a court 'may consider pleadings,
affidavits, and other evidentiary materials without converting
the motion to dismiss to a motion for summary judgment.'" VDI
Technologies v. Price, 781 F.Supp. 85, 87 (D.N.H. 1991) (quoting
Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676
F.Supp. 399, 402 (D.N.H. 1987)).

Here, however, MSD has submitted no affidavits, depositions,
or other materials (other than its amended complaint and
memorandum in opposition to defendants' motion to dismiss) in

4

support of its assertion that defendants have the requisite "minimum contacts" with New Hampshire to permit the court to properly exercise personal jurisdiction over them.

II.   Relevant Jurisdictional Factors.

The inquiry a court must conduct before exercising personal jurisdiction over a non-resident defendant is well established. See, e.g., Sawtelle v. Farrell, No. 94-392-M, slip op. at 7-11 (D.N.H. April 28, 1995), aff'd, 70 F.3d 1381 (1st Cir. 1995). It is sufficient to note that both the New Hampshire individual and corporate long-arm statutes authorize the exercise of personal jurisdiction over foreign defendants to the full extent permitted by federal law.  See N.H. RSA 510:4 (individual long-arm statute); N.H. RSA 293-A:15.10 (corporate long-arm statute). See also McClary v. Erie Engine & Mfg. Co., 856 F.Supp. 52, 54 (D.N.H. 1994); Phelps v. Kingston, 130 N.H. 166, 171 (1987). Accordingly, the pertinent inquiry focuses on whether the exercise of personal jurisdiction over defendants would comport with federal constitutional requirements of due process.  See McClary, 856 F.Supp. at 55.

Before a court may exercise personal jurisdiction over a foreign defendant in a manner consistent with the Constitution, the plaintiff must demonstrate that the defendant has "certain minimum contacts with the forum such that the maintenance of the

5

suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). To carry that burden, a plaintiff must, among other things, show that the defendant's conduct bears such a "substantial connection with the forum state" that the defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). MSD does not contend that defendants engaged in "continuous and systematic activity" in New Hampshire, nor does it ask the court to exercise general jurisdiction over them. Accordingly, if the court may properly exercise personal jurisdiction over these defendants, it must be specific jurisdiction.

A court may exercise specific jurisdiction when the cause of action arises directly out of, or relates to, the defendant's forum-based contacts. See United Elec. Workers, 960 F.2d at

6

1088-89.  In an effort to assist district courts in determining whether they might properly exercise specific jurisdiction, the Court of Appeals has formulated a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state contacts.  Second, the defendant's in-state activities must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089.  See also Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 713-19 (1st Cir. 1996), cert. denied, 117 S.Ct. 1333 (1997).


## Discussion

MSD says defendants purposefully availed themselves of the privilege of conducting activities in New Hampshire by: (1) passively (and wrongfully) "permitting" MSD to continue paying educational expenses properly borne by defendants; (2) directing an unspecified number of letters and/or telephone calls to parties in New Hampshire who are involved with Kimberli's education; and (3) receiving Kimberli's medical records, sent from New Hampshire.  See Plaintiff's Objection (document no. 14) at 15-16.  Importantly, however, MSD has not submitted affidavits from those individuals who allegedly received letters from, or otherwise had contact with, defendants.  Nor has it produced any evidence suggesting that defendants' alleged contacts with New

7

Hampshire were unsolicited and/or voluntary, rather than the product of MSD's conduct or that of third parties (such as, for example, Kimberli's custodial parent and his decision to assume residency in Akron). See, e.g., Burger King, 471 U.S. at 475 (holding that a defendant's contacts with the forum state must be voluntary and purposeful, rather than "random," "fortuitous," "attenuated," or based upon the unilateral actions of a third party). Cf. Nowak, supra (defendant was found to have purposefully availed itself of the privilege of conducting business in Massachusetts by, among other things, repeatedly soliciting business in Massachusetts from Massachusetts residents).

Even if the court were to assume that MSD has stated a viable claim against defendants, MSD has pointed to no authority which might support the court's exercise of personal jurisdiction under the circumstances present here. MSD has not adequately demonstrated that defendants have the requisite "minimum contacts" with New Hampshire. MSD has, therefore, failed to carry its burden of showing that the court may properly exercise personal jurisdiction over defendants.

Defendants' contacts with New Hampshire are, at best, extraordinarily limited. The mere existence of an alleged implicit debt owed to MSD, which is the product of defendants' purported inaction, combined with an undocumented and unspecified

(but, at most, modest) number of alleged phone calls to New Hampshire is, on this record, simply insufficient to constitute "purposeful availment." Accordingly, the court cannot, consistent with constitutional principles of due process and fundamental fairness, exercise personal jurisdiction over defendants. MSD's arguments to the contrary are not supported by the record. Moreover, its reliance upon the court of appeals' holding in Nowak is misplaced insofar as the facts of that case (in which the defendant's contacts with the forum state were far more substantial and plainly "purposeful") are readily distinguished from those in this case.

## Conclusion

Accepting MSD's factual allegations as true and even assuming it has a viable claim against defendants for monies expended on Kimberli's special education, the proper forum for such a claim would appear to be Ohio. At a minimum, because defendants have had extraordinarily few (if any) meaningful contacts with New Hampshire, this court cannot properly exercise personal jurisdiction over them. Even if MSD is correct in claiming that defendants passively allowed MSD to absorb costs which defendants should properly have borne, such conduct (even when combined with the alleged phone calls and letters referenced, but not documented by MSD) is insufficient to support the exercise of personal jurisdiction over defendants. In short, MSD has failed to demonstrate that: (1) this litigation arises

9

directly out of defendants' "forum-state contacts;" (2) defendants' alleged contacts with New Hampshire represent a "purposeful availment of the privilege of conducting activities" in New Hampshire; or (3) that the exercise of personal jurisdiction over defendants would be reasonable.  See generally Sawtell v. Farrell, 70 F.3d. 1381, 1389-96 (1st Cir. 1995); United Elec. Workers, 960 F.2d at 1089.

MSD has failed to carry its burden of making a prima facie showing that this court may properly exercise personal jurisdiction over defendants.  Defendants' motions to dismiss (document nos. 9 and 20) are, therefore, granted.  MSD's motion to strike defendants' seventh and eighth affirmative defenses (document no. 20) is denied as moot.  The Clerk of the Court is instructed to enter judgment in accordance with this order and close the case.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

December 1, 1998

cc:  Dean B. Eggert, Esq.
     H. Jonathan Meyer, Esq.
     Susan S. McGown, Esq.
     William C. Saturley, Esq.
     Thomas M. Clossan, Esq.
     Roger F. Carroll, Esq.