International Paper v. Paperboard US  CV-99-184-JD  02/08/00

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


International Paper
Box Machine Co., Inc.

     v.                                Civil No. 99-184-JD
                                       Opinion No. 2000 DNH 031
Paperboard U.S. Industries,
Inc., et al.


                            O R D E R


     International Paper Box Machine Company brought suit, based

on diversity jurisdiction, in which it alleged claims that arose

from a failed business relationship with the defendants.  The

defendants are two related corporations, Paperboard U.S.

Industries, Inc. and Paperboard Industries Corporation, and an

individual, Germain Villemarie, who worked for the corporate

defendants.  All three defendants move to dismiss the claims

against them for lack of personal jurisdiction, or alternatively

to transfer venue to the Eastern District of Kentucky.


                          Background[1]

     The plaintiff, International Paper Box Machine Company

("IPBMC") is a New Hampshire corporation with its principal place

---

     [1]The facts are taken from the complaint and the parties'
submissions and are used only as background for the order.

of business in Nashua, New Hampshire. IPBMC is in the business of manufacturing and installing machines for the packaging industry. IPBMC has a division in Ohio called Multifold International. All of the work and the employees at Multifold are controlled or supervised by IPBMC's management in New Hampshire.

International Paperboard U.S. Industries, Inc. is a Canadian corporation with its principal place of business in Kentucky, and Paperboard Industries Corporation, also a Canadian corporation, has its principal place of business in Montreal, Canada. The corporate defendants are referred to jointly as "Paperboard." Germain Villemarie is a resident of Quebec in Canada and, during the time pertinent to this case, was either an employee of or an independent consultant to Paperboard. Somerville Packaging, which is not a defendant in the case, is a division of Paperboard with a plant in Hebron, Kentucky.

Somerville had previously done business with IPBMC through IPBMC's office in Nashua, New Hampshire. In September of 1997, a sales representative from IPBMC's Multifold International division in Ohio negotiated and entered an agreement with Somerville Packaging in Toronto, Canada, to provide Somerville with a system called a "stacker." IPBMC's president, Hugh A. McAdam, authorized the sales representative at Multifold to

2

conduct the negotiations.  Although the stacker system was originally purchased to be used in Canada, Somerville decided to use it in its plant in Kentucky.  After making the agreement, Paperboard notified IPBMC that it would use Germain Villemarie as its project manager for the agreement and that Villemarie would serve as the contact person for Paperboard.

The Somerville stacker system was developed by using new design as well as modifications of previous designs and by integrating certain component parts from subcontractors.  The design work was done in New Hampshire and at Multifold in Ohio and was supervised by Jeffrey Lindberg of IPBMC in New Hampshire. Beginning in the winter of 1998, Villemarie met with Multifold personnel about changes he wanted made in the design and specifications of the stacker system.  In July of 1998, Villemarie called IPBMC's vice president, William Richardson, in New Hampshire, to express deep concern about delays in production of the stacker system.  Thereafter, Richardson and IPBMC chief engineer, Lindberg, who were in New Hampshire, talked extensively with Villemarie by telephone about the changes and about the schedule for the stacker system.  Villemarie called them back in New Hampshire to agree to their proposal to extend the schedule. Other IPBMC engineering personnel in New Hampshire also communicated with Villemarie about the project, sending manuals

3

and other information about the system to Villemarie.

Multifold sent notice to Villemarie in September of 1998 to make payments by wire transfer to Bankers Trust Company in New York or to send payments to IPBMC in Newark, New Jersey. In December of 1998, IPBMC shipped the stacker system from New Hampshire to Somerville in Kentucky. McAdam, along with Richardson and Lindberg, traveled to Somerville during the installation and testing of the stacker system. Other IPBMC personnel also went to the Somerville plant in Kentucky to perform services related to installation of the stacker system and training Somerville employees in its use.

In January of 1999, Villemarie sent a memorandum by fax on the status of the project and problems with the stacker system to Larry Macko, the sales representative at Multifold who was responsible for the deal with Somerville, which began, "Larry, Excuses are now not acceptable any more." A copy was also sent to McAdam in New Hampshire. In response, McAdam went to Kentucky to try to resolve the remaining issues.

Under the terms of the agreement, the stacker system was quoted at a price of $841,595 with an optional item called a 575 Volt Operation quoted at a price of $1,200. Paperboard was to pay 25% as a down payment with the order, 55% prior to shipment, 10% net 30 days after shipment, and 10% net after acceptance of

4

the system.  After the system was delivered in December of 1998, Richardson along with other IPBMC employees in New Hampshire repeatedly communicated with the defendants about payments due on the system.  Paperboard refused to pay the amount outstanding, which along with another outstanding invoice totaled $458,517 due on the order.

On February 25, 1999, Paperboard's counsel sent a letter to McAdam giving notice to resolve all problems to Paperboard's satisfaction by March 1, 1999.  In April, Paperboard's counsel sent notice to McAdam of Paperboard's damages due to problems with the stacker system and of their intent to deduct the cost of repairs from the amount due and to seek recovery of other damages.

IPBMC brought suit in April of 1999 alleging claims against the defendants for nonpayment of goods sold and delivered, unjust enrichment, tortious interference, breach of the good faith duty, and violation of the New Hampshire Consumer Protection Act.

<u>Discussion</u>

Paperboard and Villemarie move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(2), contending that the court lacks personal jurisdiction over them. Alternatively, the defendants argue that New Hampshire would be

5

an inconvenient forum and ask that the case be transferred, pursuant to 28 U.S.C.A. § 1404(a), to the Eastern District of Kentucky.  IPBMC objects to both dismissal and transfer.

A.  <u>Personal Jurisdiction</u>

In response to a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction.  <u>See</u> <u>Massachusetts School of Law v. American Bar Assoc.</u>, 142 F.3d 26, 34 (1st Cir. 1998).  When, as here, there has not been an evidentiary hearing, the court proceeds on a prima facie standard, taking the plaintiff's affirmative allegations as true and construing them in the plaintiff's favor.  <u>See</u> <u>id.</u>  A plaintiff cannot rely exclusively on allegations in the pleadings, however, but must provide evidence of specific relevant facts.  <u>See</u> <u>Foster-Miller, Inc. v. Babcock & Wilcox Canada</u>, 46 F.3d 138, 145 (1st Cir. 1995).  The court also accepts the defendants' factual allegations to the extent they are uncontradicted.  <u>See</u> <u>Massachusetts School of Law</u>, 142 F.3d at 34.  In considering a prima facie showing, the "court acts not as a factfinder, but as a data collector."  <u>Foster-Miller, Inc.</u>, 46 F.3d at 145.

When personal jurisdiction is challenged by a non-resident defendant, "a federal court exercising diversity jurisdiction 'is

6

the functional equivalent of a state court sitting in the forum state.'" Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)). The court must therefore satisfy both the forum state's long-arm statute and the due process requirements of the Fourteenth Amendment. See id. Because New Hampshire's long-arm statute applicable to foreign corporations has been interpreted to be coextensive with the constitutional due process requirements, the scope of personal jurisdiction depends on a due process analysis. See id. at 1388.

IPBMC contends that the defendants are subject to specific personal jurisdiction in New Hampshire. Specific jurisdiction depends on a three-part analysis that examines the defendants' contacts with the forum state in light of the claims at issue in the case. See Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999). The specific jurisdiction analysis requires the following inquiries: (1) whether the claim in the case "directly relates to or arises out of the defendant's contacts with the forum[,] . . . [(2)] whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws," and (3) whether the exercise of jurisdiction is reasonable and fundamentally fair in light of the "Gestalt factors." Id. A defendant may not avoid personal

7

jurisdiction merely because the defendant has never been physically present in the forum state, since communications to the forum state by telephone calls, letters, and other means may constitute sufficient contacts to confer jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1975); accord Sawtelle, 70 F.3d at 1389-90.

### 1. Relatedness.

The first question in the personal jurisdiction analysis is whether the claims in the case are related to or arose out of the defendant's contacts with the forum state, New Hampshire. See Phillips Exeter Academy, 196 F.3d at 288. Each of the plaintiff's causes of action must by analyzed separately to determine the relatedness of the defendants' contacts with the forum state in light of the elements of the particular cause of action. See id. at 289.

In this case, IPBMC alleges causes of action for nonpayment of the amount owed under the agreement, unjust enrichment, tortious interference with contractual and advantageous relations, breach of the implied duty of good faith and fair dealing under the agreement, and violation of the New Hampshire Consumer Protection Act. The claims for nonpayment and breach of the implied duty of good faith are, in essence, breach of

8

contract claims based on the agreement for the stacker system.[2] In the context of a contract action, the court must determine whether "the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Phillips Exeter Academy, 196 F.3d at 289. A mere contractual relationship between an in-state party and an out-of-state party, however, is insufficient to support personal jurisdiction. See id. at 290. In addition, while communications or transmittal of information into the forum state are contacts, they are meaningful contacts, in the jurisdictional analysis, only if they are sufficiently related to the plaintiff's cause of action. See Sawtelle, 70 F.3d at 1389-90.

The initial contract negotiation and formation in this case occurred between the Multifold sales representative in Ohio and employees of Somerville (a division of Paperboard) in Canada. Although Somerville likely understood that it was doing business with a division of a New Hampshire company, the contract formation process occurred in Ohio and Canada, not New Hampshire.

---

[2]There are three related doctrines of the implied good faith obligation that pertain to contract formation, termination of at-will contracts, and limits on discretion in contract performance. See Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139 (1989). IPBMC has not specified whether it is alleging breach of the good faith obligation in contract formation or in performance.

While the project was in progress, the parties (with Villemarie acting on behalf of the corporate defendants) apparently renegotiated the production schedule through telephone conversations to and from New Hampshire. Neither the nonpayment claim nor breach of the implied good faith duty claim appears to arise from the renegotiation of the project's schedule. The design and specification changes in the project, which might have led to some of IPBMC's claims, were made by Villemarie at meetings with IPBMC's sales representatives in Ohio and Canada, not New Hampshire. To the extent information was sent between the parties that related to the design and specifications of the project, IPBMC has shown that its employees sent information from New Hampshire to the defendants in Kentucky, not vice versa. Cf. Sawtelle, 70 F.3d at 1389-90 (transmission of information into New Hampshire constitutes a contact).

After the stacker system was installed in Kentucky, the corporate defendants responded to IPBMC's demands for payment through counsel who wrote to IPBMC's president, McAdam, in New Hampshire, refusing to pay and asserting claims for damages. The breach occurred, however, where the defendants decided not to pay the amounts due, which is likely to have been either Kentucky or Canada, but was not New Hampshire. See Phillips Exeter Academy, 196 F.3d at 289. Alternatively, since the payments were to be

10

made in either New York or New Jersey, to the extent that the location where the payments were due is material, that factor does not implicate contacts with New Hampshire. See id. at 291.

For similar reasons, the defendants' contacts with New Hampshire are not related to IPBMC's claim for unjust enrichment. A claim for unjust enrichment, under New Hampshire law, arises where no express contractual relationship exists between the parties and the defendant has received a benefit that it would be unconscionable to retain without restitution.[3] See Pella Windows and Doors, Inc. v. Faraci, 133 N.H. 585, 586 (1990). The stacker system is installed in Kentucky. The demands for payment were sent from New Hampshire or Ohio to Kentucky or Canada. Although Paperboard's counsel sent two letters to IPBMC in New Hampshire, the unjust enrichment claim did not arise from the letters, but instead arose from the fact that the defendants did not pay the amount IPBMC believes remains due for the system and they have kept and used the system.

With respect to IPBMC's tortious interference with contractual and advantageous relations, personal jurisdiction depends upon the "causal nexus between the defendant's contacts

_____

[3]The parties have not addressed a choice of law question in this case, and the court refers to New Hampshire law only as guidance in the context of the personal jurisdiction analysis.

11

and the plaintiff's cause of action." <u>Phillips Exeter Academy</u>, 196 F.3d at 289. A cause of action for tortious interference requires the plaintiff to show that it had a contractual or economic relationship with a third party, that the defendant knew of the relationship, that the defendant intentionally and improperly interfered with the relationship, and caused damages. See <u>Jay Edwards, Inc. v. Baker</u>, 130 N.H. 41, 46 (1987); <u>accord</u> <u>Barrows v. Boles</u>, 141 N.H. 382, 392 (1997). The complaint alleges that by engaging in all of the conduct related to the parties' agreement and its demise, the defendants "intentionally and wrongfully interfered with Plaintiff's advantageous business relations." IPBMC's theory of liability is not entirely clear. The defendants' few contacts with New Hampshire, telephone calls about the project's design and schedule changes, and Paperboard's notices through counsel of dissatisfaction about the system and its repair, do not appear to be causally tied to the interference with advantageous relations claim.

IPBMC's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A, claims alleges that the defendants' conduct, described in the complaint as a whole, constitutes unfair and deceptive acts or practices within the meaning of the statute. The defendants' conduct occurred primarily in Kentucky and Canada, but not in New Hampshire. IPBMC has not shown that the contacts are

12

sufficiently related to the cause of action to serve as a basis for personal jurisdiction.

Having found that IPBMC has not carried its burden of showing that the defendants' contacts with New Hampshire are related to its claims against them, the remaining inquiries in the personal jurisdiction analysis require little consideration.

2. Purposeful availment.

Contacts with a forum that are merely random or fortuitous do not satisfy due process. See Burger King, 471 U.S. at 474-75. Instead, personal jurisdiction must be based on a defendant's "purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable." Sawtelle, 70 F.3d at 1391 (internal quotation omitted). The two focal points of purposeful availment are voluntariness and foreseeability. See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 716 (1st Cir. 1996).

a. Voluntariness.

Voluntary actions are not based on the unilateral actions of another party or a third person, but are the defendant's own activities directed at the forum. See id. To be voluntary, the defendant must reach out to the plaintiff's state to create a

13

relationship, not merely accept a relationship tendered from the state. See Phillips Exeter Academy, 196 F.3d at 292. In this case, IPBMC has shown that the defendants knew that Multifold, an Ohio company, was a division of IPBMC, a New Hampshire company. The circumstances do not show that the defendants reached out to New Hampshire to create a relationship with IPBMC, but instead reached to IPBMC's division in Ohio to do business. The defendants' later communications with IPBMC in New Hampshire appear to have been the result of IPBMC's own processes and procedures rather than the defendants' choice.

b. Foreseeability.

The foreseeability factor relates to whether the defendant's contacts with the forum state are "such that he should reasonably anticipate being haled into court there." Nowak, 94 F.3d at 716. When a defendant has deliberately engaged in significant activities in the forum state and has purposefully directed its commercial activities to the state, it is reasonably foreseeable that the defendant may be subject to suit in that state. See Burger King, 471 U.S. at 474-76.

In this case, the defendants' worked initially with Multifold in Ohio, not IPBMC in New Hampshire. The defendants then continued to communicate with Multifold even after the

14

relationship included IPBMC. IPBMC has not shown that the defendants benefitted from their contacts with IPBMC in New Hampshire, since those contacts were largely acrimonious, being addressed to delays in the project schedule and issues about the performance of the stacker system. From the record, Paperboard's contacts with IPBMC in New Hampshire did not have positive results from Paperboard's point of view, and do not show the kind of commercial benefits that would subject them to suit in New Hampshire. See, e.g., Phillips Exeter Academy, 196 F.3d at 292; Sawtelle, 70 F.3d at 1394.

### 3. The Gestalt factors.

The final test of whether the exercise of personal jurisdiction comports with the requirements of due process depends upon the reasonableness and fairness of subjecting the defendant to suit in the forum state. See Nowak, 96 F.3d at 717. When the plaintiff has made a prima facie showing on the first two steps of the analysis, fairness is assessed on a sliding scale so that a weak showing on the first two prongs of the personal jurisdiction analysis puts a lighter burden on the defendant to show that jurisdiction here would be unreasonable or unfair. See id. The factors used to assess whether jurisdiction comports with fair play and substantial justice under the

15

circumstances of a particular case are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Id. (quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)).

In this case, the Gestalt factors do not fortify IPBMC's weak case as to relatedness and purposeful availment. Since the defendants are residents of Kentucky and Canada, jurisdiction in New Hampshire would impose a burden on them to appear. While New Hampshire may have some interest in adjudicating the dispute, because IPBMC is a New Hampshire corporation, the agreement was negotiated, entered into, and substantially performed elsewhere. Witnesses and evidence are in several locations, including New Hampshire. The stacker system is installed in Kentucky, and the greater part of the information about its performance, problems, and repairs is located there. While it is no doubt more convenient for IPBMC to litigate in New Hampshire, that factor alone cannot serve as a basis to reasonably and fairly exert jurisdiction over defendants who have so few contacts with New Hampshire.

As IPBMC has not shown that the exercise of personal

16

jurisdiction over the defendants in this case would comport with the requirements of due process, the defendants' motion to dismiss must be granted. There is no need, therefore, to consider the defendants' alternative motion to transfer the case to the Eastern District of Kentucky. The dismissal of the case is without prejudice to IPBMC's right to refile the case in any district where the defendants may be subject to personal jurisdiction. See Phillips Exeter Academy, 196 F.3d at 292 n.4.

Conclusion

For the foregoing reasons, the defendants' motion to dismiss (document no. 10) is granted. The clerk of court shall enter judgment accordingly, and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

February 8, 2000

cc:  William C. Saturley, Esquire
     Joseph H. Walsh, Esquire
     Andrew W. Serell, Esquire
     Mark A. Robinson, Esqurie