IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0432
════════════
 
Moki Mac River Expeditions, 
Petitioner,
 
v.
 
Charles Drugg and Betsy 
Drugg, Individually, and as Representatives of the Estate of Andrew Patrick 
Drugg, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued November 
17, 2005
 
 
Justice Johnson, joined by Justice Medina, dissenting.
 
 
Texas’ 
long-arm jurisdiction over non residents reaches as far as the federal 
constitution allows. See Guardian Royal Exch. Assurance, Ltd. v. English 
China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). But, just how far the 
constitution allows has not been a simple question since International Shoe 
Co. v. Washington, 326 U.S. 310 (1945). See Mark Maloney, Specific 
Personal Jurisdiction and the “Arise From or Relate To” 
Requirement . . . What Does It Mean?, 50 Wash. & Lee L. Rev. 1265, 1266-67 
(1993). As to a state’s exercising in personam jurisdiction over a non resident, 
federal due process requires “only that in order to subject a defendant to a 
judgment in personam, if he be not present within the territory of the 
forum, he have certain minimum contacts with it such that the maintenance of the 
suit does not offend ‘traditional notions of fair play and substantial 
justice.’” International Shoe, 326 U.S. at 316 (quoting Milliken v. 
Meyer, 311 U.S. 457, 463 (1940)). Specific jurisdiction over a nonresident 
defendant comports with federal constitutional due process if the defendant’s 
alleged liability arises from or is related to an activity conducted within the 
forum state. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 
414 & n.8 (1984). It is “the defendant’s conduct and connection with the 
forum” that are critical. Michiana Easy Livin’ Country, Inc. v. Holten, 
168 S.W.3d 777, 789 (Tex. 2005) (citing Burger King Corp. v. Rudzewicz, 
471 U.S. 462, 474 (1985)).
There is 
nothing wrong with an enterprise arranging its affairs so that it avoids doing 
business in or engaging in activities directed toward a particular forum and 
thereby precludes that forum’s exercise of jurisdiction over it. See 
World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The key 
inquiry is whether a defendant has so arranged its affairs. If not, then 
“he should reasonably anticipate being haled into court” in the forum. 
Id. The Supreme Court has not been overly restrictive in its view of 
federal due process limits on a forum’s exercise of jurisdiction over 
nonresidents that purposefully direct activities toward the forum’s 
residents:
 
[W]here a 
defendant who purposefully has directed his activities at forum residents seeks 
to defeat jurisdiction, he must present a compelling case that the presence of 
some other considerations would render jurisdiction unreasonable. Most such 
considerations usually may be accommodated through means short of finding 
jurisdiction unconstitutional. For example, the potential clash of the forum’s 
law with the “fundamental substantive social policies” of another State may be 
accommodated through application of the forum’s choice-of-law rules. Similarly, 
a defendant claiming substantial inconvenience may seek a change of venue.
 
Burger 
King, 471 U.S. at 477.
Moki Mac is a 
Utah company which has conducted guided tours in the Grand Canyon for many 
years. In addition to general advertising and maintaining a website for 
potential clients to access, Moki Mac’s efforts to attract customers include 
targeting particular persons to whom it sends brochures describing Moki Mac’s 
rafting and hiking trips. Its targeted audience includes persons who previously 
inquired about or have taken its trips. At and for several years prior to the 
time reservations were made for Andy’s trip in 2001, Moki Mac’s targeted 
audience included Texas residents. As the Court sets out, some of Moki Mac’s 
efforts which were directed toward Texas residents included regular advertising 
in Texas, hiring public relations firms to target media groups and tour 
operators in Texas, soliciting Texas residents through mass and targeted 
direct-mail campaigns, and utilizing particular customers to become de 
facto group leaders to plan, organize and promote Moki Mac trips. Moki Mac 
also has given discounted trip prices to some Texas clients who brought 
potential customers to Moki Mac’s attention.
Participants 
on Moki Mac’s guided rafting and hiking trips engage in activities and encounter 
conditions which Moki Mac recognizes pose risks of injury and death. Its 
brochures and “Visitors Acknowledgment of Risk” form (the VAR agreement) 
identify certain risks, warn that enumerated risks and “other unknown or 
unanticipated risks may cause injury or death,” and state that Moki Mac has 
taken reasonable steps to provide “appropriate equipment and/or skilled guides 
so you can enjoy an activity for which you may not be skilled.” One of the 
specific dangers warned of was falling during a hike with resulting injury or 
death. Andy Drugg fell during a hike and was killed.
The Druggs 
received Moki Mac’s brochures from a Texas acquaintance. After reviewing the 
brochures and corresponding with Moki Mac from Texas, the Druggs decided to 
allow thirteen-year-old Andy to go on one of the trips. Moki Mac confirmed 
Andy’s reservation and in accordance with its usual procedures forwarded to the 
Druggs a VAR agreement which Moki Mac required to be signed before persons could 
take one of their trips. Betsy and Andy signed the agreement in Texas and 
returned it to Moki Mac. The agreement set out several risks which could be 
encountered on a Moki Mac trip and specified the possibility of injury or 
death:
 
In 
consideration of the services of Moki Mac River Expeditions, Inc., their 
officers, agents, employees, and stockholders, and all other persons or entities 
associated with those businesses, (hereinafter collectively referred to as “Moki 
Mac”), I agree as follows: . . .
 
I agree 
to assume responsibility for the risks identified . . . . 
Therefore, I assume full responsibility for myself, including my minor children, 
for bodily injury, death, loss of personal property, and expenses thereof as a 
result of those inherent risks an/or of my negligence in participating in this 
activity.
 
. . 
.
 
[T]his 
agreement shall be effective and binding upon myself, my heirs, assigns, 
personal representatives, estate, and all members of my family, including any 
minors accompanying me.
 
At its special 
appearance hearing, Moki Mac’s representative testified that Moki Mac considered 
the VAR agreement to have been effective when and where it was signed by the 
Druggs—in this case, Texas.
The Court 
notes that for Texas courts to properly exercise specific jurisdiction over Moki 
Mac as a non resident, Moki Mac must have had (1) minimum contacts with Texas by 
purposefully availing itself of the privilege of conducting activities here, and 
(2) liability arising from or related to those contacts. ___ S.W.3d ___. The 
Court concludes that Moki Mac’s contacts with Texas were targeted to a 
particular audience, were purposeful, not a “mere fortuity,” and thus satisfied 
the first prong of the jurisdictional due process inquiry. See id. at 
___. However, the Court determines that the Druggs’ suit did not “arise 
from or relate to” Moki Mac’s activities in Texas and that the second prong of 
the due process inquiry was not met.
As part of 
its analysis the Court references a “restrictive proximate-cause” test used by 
the First Circuit Court of Appeals. See Nowak v. Tak How Invs., Ltd., 94 
F.3d 708 (1st Cir. 1996), cert. denied 520 U.S. 1155 (1997). The 
Nowak facts are analogous to those before us and in my view the opinion 
sets out a fair and reasonable approach to the relatedness aspect of the 
jurisdictional question.
Tak How was a 
Hong Kong corporation which owned a hotel in Hong Kong and had no place of 
business outside Hong Kong. It had no shareholders, assets, or employees in 
Massachusetts. It advertised in national and international magazines and listed 
the hotel in various hotel guides used at travel agencies in Massachusetts. On 
one occasion it sent direct mail solicitations to former Tak How guests, 
including previous guests living in Massachusetts. The company employing Mr. 
Nowak in Massachusetts had an agreement with Tak How for rates when its 
employees stayed at the hotel. When its employees went to Hong Kong for business 
the company booked reservations at the hotel. Mrs. Nowak accompanied her husband 
to Hong Kong on a business trip and they stayed at the hotel pursuant to 
reservations made by the company. Mrs. Nowak drowned in the hotel swimming pool. 
Mr. Nowak and his children sued Tak How in Massachusetts. Tak How removed the 
case to federal court and the federal district court refused to dismiss for lack 
of personal jurisdiction. The First Circuit affirmed. In doing so, the court 
surveyed and discussed the various approaches taken to the due process 
relatedness issue, just as the Court does in its opinion. The Nowak court 
then noted the First Circuit’s reputation as a proponent of the more restrictive 
“proximate-cause” standard as to the relatedness issue and the importance of 
foreseeability in the due process analysis: “Foreseeability is a critical 
component in the due process inquiry, particularly in evaluating purposeful 
availment, and we think it also informs the relatedness prong.” 
Id. at 715 (emphasis added). See also Burger King, 471 U.S. at 474 
(“[T]he foreseeability that is critical to due process analysis . . . is that 
the defendant’s conduct and connection with the forum State are such that he 
should reasonably anticipate being haled into court there.”) (quoting 
World-Wide Volkswagen, 444 U.S. at 297). The Nowak court concluded 
that adherence to the proximate cause construct in jurisdictional issues should 
not be so strict as in tort issues:
 
We see no 
reason why, in the context of a relationship between a contractual or business 
association and a subsequent tort, the absence of proximate cause per se should 
always render the exercise of specific jurisdiction unconstitutional.
When a 
foreign corporation directly targets residents in an ongoing effort to further a 
business relationship, and achieves its purpose, it may not necessarily be 
unreasonable to subject that corporation to forum jurisdiction when the efforts 
lead to a tortious result. The corporation’s own conduct increases the 
likelihood that a specific resident will respond favorably. If the resident is 
harmed while engaged in activities integral to the relationship the corporation 
sought to establish, we think the nexus between the contacts and the cause of 
action is sufficiently strong to survive the due process inquiry at least at the 
relatedness stage.
 
. . .
 
While the 
nexus between Tak How’s solicitation of [Nowak’s employer’s] business and Mrs. 
Nowak’s death does not constitute a proximate cause relationship, it does 
represent a meaningful link between Tak How’s contact and the harm suffered.
 
 
Id. at 
715-16.
The court 
then applied further considerations articulated by the Supreme Court as being 
appropriate to determining if the exercise of personal jurisdiction by a forum 
over a non resident defendant would be constitutional:
 
Our 
conclusion . . . does not end the inquiry. Personal jurisdiction may only be 
exercised if it comports with traditional notions of “fair play and substantial 
justice.” International Shoe, 326 U.S. at 320. Out of this requirement, 
courts have developed a series of factors that bear on the fairness of 
subjecting a nonresident to a foreign tribunal . . . as 
follows: “(1) the defendant’s burden of appearing, (2) the forum state’s 
interest in adjudicating the dispute, (3) the plaintiff’s interest in obtaining 
convenient and effective relief, (4) the judicial system’s interest in obtaining 
the most effective resolution of the controversy, and (5) the common interests 
of all sovereigns in promoting substantive social policies.”
 
 
Id. at 
717 (quoting United Elec., Radio & Mach. Workers v. Pleasant St. 
Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)); see Burger King, 471 
U.S. at 477-78. Such an approach properly focuses on and emphasizes the actions 
of a nonresident defendant that has purposefully directed actions at a forum’s 
residents, and on the reasonable foreseeability to the defendant that its 
actions will make it amenable to suit in that forum.
While Moki 
Mac might have a strong forum non conveniens argument, see Tex. Civ. Prac. & Rem. Code § 
71.051, the facts before us do not present a compelling case that Texas’ 
exercise of jurisdiction over Moki Mac would be unreasonable. See 
Burger King, 471 U.S. at 477. Moki Mac’s conduct was particularly designed 
to and did increase the likelihood that Texas residents would respond favorably. 
Andy Drugg’s death occurred while he was engaged in activities integral to the 
relationship Moki Mac induced by its efforts specifically directed toward Texas 
residents. Moki Mac should have reasonably foreseen that an injury to a client 
such as Andy while the client participated in activities integral to the 
relationship directly produced through Moki Mac’s activities directed toward 
Texas residents would subject Moki Mac to being sued over the injury in Texas. 
There was a meaningful link between Moki Mac’s actions directed toward Texas 
residents and the Druggs’ suit. Accordingly, I would hold that the substance of 
the Druggs’ suit is related to Moki Mac’s activities which were purposefully 
directed toward Texas residents; the second prong of the due process inquiry is 
satisfied; it is not unreasonable or unfair to Moki Mac for Texas to exercise 
jurisdiction over Moki Mac as to the Druggs’ suit; and subject to a “fair play 
and substantial justice” analysis, the exercise of jurisdiction by Texas in this 
case falls within the boundaries of federal constitutional due process 
requirements. See Nowak, 94 F.3d at 715-16.
The court of 
appeals performed the “fair play and substantial justice” analysis which the 
Supreme Court has indicated both protects a non resident from improper exercise 
of jurisdiction by a forum, and yet might allow a lesser showing for the 
exercise of jurisdiction over a defendant who purposefully directs activities 
toward the forum. See Burger King, 471 U.S. at 477-78 (noting 
considerations which sometimes “serve to establish the reasonableness of 
jurisdiction upon a lesser showing of minimum contacts than would otherwise be 
required”). I agree with the court of appeals’ analysis and determination that 
the exercise of specific jurisdiction over Moki Mac by Texas would not offend 
traditional notions of fair play and substantial justice. ___ S.W.3d ___.
I would 
affirm the judgment of the court of appeals.
 
 
________________________________________
Phil 
Johnson
Justice
 
OPINION DELIVERED: March 
2, 2007